No. 961

First Circuit

---

## McCRANEY v. HAMMOND COCA COLA BOTTLING CO.

---

(May 3, 1932. Opinion and Decree.)

---

Ellis, Ellis & Ellis, of Amite, attorneys for plaintiff, appellee.

A. W. Spiller, of Hammond, attorney for defendant, appellant.

MOUTON, J. First street runs north and south through the town of Amite; Oak street east and west.

Plaintiff was driving his auto northward on First street, and made a turn at the intersection of the two streets, going eastward on Oak street. A truck belonging to defendant company was parked on Oak street about twenty or thirty feet from the corner where First street intersects Oak street from the south; the front part of the truck touched the curb of the sidewalk on the south side of Oak street. Mr. Brumfield was the driver of the truck.

While backing the truck, the collision occurred with plaintiff's auto which had turned the corner while going eastward on Oak street.

Brumfield says he did not see plaintiff or his car until after the collision. The fact is that it was by the impact that he found out that a collision had occurred. He first saw the car, he testifies, when it had stopped on the east side of the truck, at about twenty feet therefrom. It is therefore certain that he did not see plaintiff's auto when it was approaching the corner, after it entered the intersection, or when it made the turn in Oak street.

Mr. Fajoni, witness for plaintiff, saw when the car plaintiff was driving was struck by the rear end of the truck. The noise caused by the crash, he says, first attracted his attention. This witness states that he did not see plaintiff's car as it approached the corner from the south, the direction it was traveling on First street; and necessarily could not estimate the rate of speed at which it was moving at that time. He first saw plaintiff's car, he testifies, as it was making the turn, but could not and would not make an estimate of the speed it was then making. There is nothing to indicate in his testimony that plaintiff was driving at an excessive rate of speed. This witness says that plaintiff's auto was nearly turned over when it was struck by the truck.

Mr. Russell was sitting across the street from where the truck was parked, and heard the wreck. He did not see plaintiff's car as it was coming up First street, when it turned at the intersection, or before it collided with the truck; and at that time, according to his testimony, the truck had backed at a distance of eight or ten feet from the curb, which Fajoni had fixed at about three or four feet.

Russell says that the auto was "cocked up" about halfway by the impact, and would have gone over if the truck had not rolled back to the curb.

Neither Russell, Fajoni, nor Brumfield, driver of the truck, saw plaintiff's auto as it was coming to the southeastern corner

of the intersection. Fajoni is the only witness who saw the auto turn the corner and as it proceeded eastward on Oak street, but could form no estimate of the speed it was then traveling.

Plaintiff is the only witness who testified in reference to the speed he was making when he approached the corner. His statement is that he had cut off the gas and was then going about fifteen miles an hour. There is no contradiction of this statement by any witness, which defendant sought to discredit by Mr. Dixon, who said that a block further south from the corner plaintiff had passed by a garage, going at forty or forty-five miles an hour, but this witness said there is nothing unusual in going at that speed and then stopping at the next corner. Plaintiff admits he was going about twenty-five or thirty miles an hour when he passed the point where Dixon saw his car pass by the garage. The estimate of the speed of an auto is always difficult to make, and is rarely accurate, and there is nothing making it improbable that plaintiff was then traveling at about the speed to which he testified.

When he approached the corner, plaintiff says, he slowed down and reduced his speed to about fifteen miles an hour; and there is no testimony to the contrary. He further testifies that, when he reached at about six or eight feet from an iron sign at the center of the intersection, he turned into Oak street, made a broad turn, when suddenly the truck backed into his pathway, and that in his endeavor to avoid the collision he accelerated his speed, but that, notwithstanding his efforts in that direction, the truck struck his auto back of his seat, but that he, however, escaped receiving personal injuries which otherwise would have resulted from the accident. His testimony is that, as he rounded the corner, he saw the truck standing still, and could see no one in it, and that "it backed out all of a sudden," and made it impossible to avert the collision, which had the effect of tipping his car and shoving it up on two wheels, and that he thought he was "going over."

There is no testimony in this record to show that plaintiff was going faster than fifteen miles an hour when he turned the corner, and that he missed the iron sign in the center of the intersection by more than six or eight feet when he made the turn. There is no testimony to the contrary, and, in the absence of some facts or circumstances arising in the case which would have the effect of contradicting plaintiff's testimony in that respect, his statement in reference thereto should be accepted as true.

In order to weaken plaintiff's evidence on this subject, counsel for defendant refers to the distance at which the auto was stopped eastward of the rear end of the truck after the collision. Brumfield, the truck driver, fixed that distance at about twenty feet, and Russell, witness for plaintiff, at twenty-five or thirty feet.

The contention of counsel for defendant is that it could have been stopped in a much shorter radius. It is probable that, under ordinary circumstances, if the auto had been going at fifteen miles an hour at the time of the accident, it could have been brought to a standstill within a shorter distance than either twenty or thirty feet. Here, however, it appears, from the testimony of plaintiff, which is uncontradicted, that, when he realized he would collide with the truck, he put on gas and accelerated his speed, as we have hereinabove stated. This explanation accounts for the fact that the auto moving under an accelerated rate of speed continued on its eastward course to the distance of either twenty or thirty feet from the rear of the truck. No doubt the lower court

adopted that view of the case in which we can find no error.

It cannot be said, under the circumstances as above related, that plaintiff was at fault or negligent in thus turning the corner at the intersection of those streets and in continuing on his way to the east, when, to his surprise, the truck was suddenly backed by its driver northward across Oak street.

The evidence of the plaintiff, likewise that of Fajoni and Russell, shows that the auto was tilted at a considerable angle when it was struck by the end of the truck, and came near being turned over. This fact shows that it was being backed with considerable force when the impact took place. It is shown that this truck is about fifteen feet long, and therefore occupied, when it was touching the south curb of Oak street, about one-half of the way, measuring from the center line of that street, which is shown to be sixty feet in width. As such was the length of that truck, it took but a few feet of backing from the curb to have its rear part protrude to a dangerous point in that street, so as to impede the passage of cars turning that corner at that intersection.

Brumfield, driver of the truck, says he looked to the east, behind, through a mirror, and westward to the corner in question, before backing the truck, that he could see in all directions, and that he did not see plaintiff's car at all.

Obviously, Brumfield was sitting on the left side of the cab when he got in to move it backward, and was not in an advantageous position to see westward where the auto was approaching the corner. In that direction, it seems that he had a window through which he could look for autos or vehicles traveling in that way. He had bottles in the truck, but says that he could see over the top of the bottles.

It is possible, as explained by him, that, with the mirror in the truck, and the window, he could see in all directions sufficiently well to avoid colliding with other vehicles. It is certain, however, that he did not see the plaintiff's auto until it had passed to the rear of the truck, and had been stopped to the east of it.

The foregoing analysis of the evidence justifies the conclusion that the truck was backed too suddenly and too far into Oak street by its driver, Brumfield, and which was the proximate cause of the accident; that plaintiff was not at fault, and could not avoid the collision.

Counsel for defendant contends that plaintiff should have minimized the damages claimed for the repairs to his car by accepting an offer made to have the work done for a smaller amount.

The proof shows that plaintiff had the repairs made by the Capitol City Auto Company of Baton Rouge, from which he bought the car. He testifies that his car was new, and that he wanted a good job done. It is proved that the repairs made were necessary, and that no overcharges were demanded by the Capitol City Auto Company. Plaintiff had the right to have his car repaired by the company from which he had purchased it, and could not be controlled in having the repairs made by a company in which, perhaps, he had no confidence. If the charges of the Capitol City Auto Company were out of proportion to their value, or exorbitant, there would be ground for a reduction of the amount charged therefor, but, as the price demanded is legitimate and the work is satisfactory, defendant is not entitled to a reduction on its plea to have the damages minimized.