Edward Thomas Sheehan, an employee of the Sewerage Water Board of New Orleans, was killed on June 21st, 1946, when the emergency repair truck of the Board, which he, as its employee, was operating, came into collision with a truck of the Hanson-Flotte Company, a partnership, at the corner of Fern and Oak Streets, in New Orleans. The Sewerage Water Board, having effected a settlement of its liability under the Workmen's Compensation Laws of Louisiana, Act No. 20 of 1914, as amended, under which it agreed to pay to Sheehan's widow $14.04 per week for three hundred weeks, together with $300.00 of the funeral expense, and having thus become subrogated to that extent to the rights of Mrs. Sheehan against any tort-feasor who might be legally liable, joined with Mrs. Sheehan in bringing this action based on the allegation that the collision was caused by negligence of the driver of the Hanson-Flotte truck. The Sewerage Water Board prays for judgment for such amount as it has paid or may pay to Mrs. Sheehan and Mrs. Sheehan prays for judgment for $15,000.00, subject to the rights of the Sewerage Water Board.
During the course of the trial it developed that one of the children of Mr. and Mrs. Sheehan, Rudolph E. Sheehan, had not reached the age of majority and was, therefore, a minor and should have been joined as a party plaintiff. By consent, therefore, the Court permitted the minor to be joined as a party plaintiff and later Mrs. Sheehan qualified as natural tutrix of the said minor and, on his behalf, filed a petition asking that he be made party plaintiff with her.
The defendants are the partnership known as Hanson-Flotte Company, John D. Hanson and James J. Flotte, Jr., the members of the partnership, the Massachusetts Bonding and Insurance Company, the liability insurance carrier of the said partnership, and Squire Davis, the employee of the partnership who was operating *Page 659 
the truck at the time of the occurrence of the collision.
The defendants denied that there was any negligence on the part of Squire Davis and, in a supplemental answer, the Hanson-Flotte Company and the individual members of the partnership, averring that the accident was caused solely and entirely by the negligence of Sheehan and averring also, in the alternative that it appear that there was negligence on the part of Squire Davis, that the accident was caused by the contributory negligence of Sheehan, prayed for judgment against the Sewerage Water Board in the sum of $300.00, which they allege to be the cost of repairing the damage sustained by their truck.
There was judgment dismissing the main demand and on the reconventional demand there was judgment in favor of the Hanson-Flotte Company and the individual members of the partnership in the sum of $300.00. From this judgment plaintiffs have appealed.
[1] The accident occurred in the afternoon at about 2:30 o'clock. The weather was clear and the streets were dry. The truck of the Hanson-Flotte Company was on its way down Oak Street and the Sewerage Water Board truck was going out Fern Street towards the Mississippi River, so that the Hanson-Flotte truck approached the other from the right-hand side. Neither street at that point was recognized under the City Traffic Ordinance, No. 13702 C. C. S., as a right of way street, but since the Hanson-Flotte truck was approaching from the right side of the other truck, it was entitled to the right of way if the two trucks reached the intersection at about the same time, that is, if the other did not enter the intersection sufficiently in advance to entitle it to the right of way by reason of preemption.
The City Traffic Ordinance provides: "When two vehicles enter an intersection at the same time (other than through streets and boulevards) the preference belongs to the driver on the right. If two vehicles approach an intersection the first to enter the intersection has preference." (Rule 6-c.)
It is charged in the petition that Squire Davis, the driver of the Hanson-Flotte truck, was guilty of negligence in that he was operating the truck at a speed in excess of thirty miles per hour, and in that he entered the intersection without stopping and without making certain that it was safe to do so. It is also charged that he violated the right of way provision of the Traffic Ordinance for two reasons "(1) That the truck of Hanson-Flotte Co. approached the right side of the Sewerage 
Water Board of New Orleans truck; (2) that the said Sewerage 
Water Board of New Orleans truck entered the intersection first and had gone more than half way across before the truck of Hanson-Flotte Co. entered the intersection * * *". We say in passing that it is obvious that whatever the facts, the allegation that the truck of the Sewerage Water Board was entitled to the right of way for the reason that the other truck was approaching from its right, obviously results from a misreading or misunderstanding of the provision of the traffic ordinance which we have already quoted.
The defendants deny that Davis was in any way at fault and charge that Sheehan was negligent in the following particulars:
That he drove his truck at a speed of approximately forty miles per hour; that he failed to stop or reduce his speed as the truck, which he was operating, entered the intersection; and that he entered the intersection without taking proper precautions "when he knew or should have known that vehicles approaching from his right on Oak Street had the right of way * * *".
There were several persons who testified that they actually witnessed the collision, but plaintiffs rely almost entirely on the physical facts which they assert show that the driver of the Hanson-Flotte truck was negligent, on the testimony of the driver of that truck who said that after looking into Fern Street when his truck was about fifty feet from the intersection he did not look again and did not know that the Sewerage Water Board truck was also entering the intersection, and they rely to a very large extent on the *Page 660 
testimony of certain "experts", who, from the physical facts and from the photographs, testified that it was obvious that the Sewerage Water Board truck had either stopped or practically stopped and that the Hanson-Flotte truck dashed into it at a very high rate of speed.
As we have said, the driver of the Hanson-Flotte truck, Squire Davis, admitted that he did not look into the intersection again after his first glance when he was about fifty feet from the intersection, and that he entered the intersection at a speed of between fifteen and twenty miles per hour and did not see the other truck until he had reached the center of the intersection when he looked to his left and saw the other truck about five or six feet away.
[2] In view of these admissions we have no difficulty in reaching the conclusion that Davis was, to some extent, at fault and that had he been operating his truck carefully there would have been no accident.
And counsel for plaintiffs relying on this negligence confidently assert that there can be no doubt of the right of plaintiffs to recover.
But there is in the record a plea of contributory negligence and there is also a finding of the district judge to the effect that the negligence of Sheehan, himself, was the sole cause of the accident. That this was the finding of the district judge is made evident by the fact that he rendered judgment not only against plaintiffs on the main demand, but in favor of plaintiffs in reconvention on the reconventional demand, and is also made evident by his written reasons: "Four eyes (testimony of two women eye witnesses) is a safer evaluation for a Court to determine legal responsibility, than a hundred theories of experts."
Counsel, argue that when the Hanson-Flotte truck was fifty feet from the intersection, Davis, its driver, could have seen into Fern Street for a distance of one hundred and fifty-five feet and since he did not see the Sewerage Water Board truck there can be no doubt that this failure was the sole cause of the accident.
They overlook the fact that Sheehan, too, could just as readily have seen the Hanson-Flotte truck and yet obviously did not do so. They overlook also the fact that, unless the Sewerage Water Board truck reached the intersection sufficiently in advance of the other truck to entitle it to enter first and preempt the intersection, the other truck, under the already quoted provision of the traffic ordinance, was entitled to the right of way.
[3,4] When we use the word "preempt" we do not attribute to it the meaning which counsel for plaintiffs seem to understand that it has. It does not mean that, where one vehicle, by traveling at an excessive rate of speed, is able to enter the intersection when the other which is approaching it is still a few feet away, the first has preempted the intersection and is entitled to cross regardless of what may otherwise have been the right of way. It does not mean that two drivers may race to see which can enter first and that then the one who does enter first may say that he has established his preemption. It merely means that if two vehicles approach an intersection at proper speeds and with the exercise of ordinary precautions and yet one enters sufficiently in advance of the other to justify the belief that it may continue across without danger, it may do so regardless of the fact that the other has approached from the right and would have had the right of way but for the advance position of the first.
If a decision on the question of whether Sheehan was guilty of contributory negligence depended solely on the testimony of the eyewitnesses, there could be no doubt whatever of the outcome because these witnesses were unanimous in the view that the Sewerage Water Board truck entered at high speed and without stopping or substantially reducing its speed.
Miss Marcia Sbisa and a guest, Mrs. C.C. McCann, were on the front porch of the residence of Miss Sbisa, which was very close to the corner where the accident occurred. Both say that they saw the actual impact between the two trucks. Miss Sbisa says: "I would say that the *Page 661 
black truck coming on Fern Street was going at a much greater rate of speed than the blue truck was going, and I am not a driver and I can't accurately say the speed, but I would judge it to be over thirty-five miles an hour for the black truck and between twenty and twenty-five for the blue truck. That is my estimation on it, but I couldn't say as an authority on it."
Mrs. McCann said that when she first saw the two trucks the Sewerage Water Board truck was traveling "thirty-five to forty miles per hour".
Joseph A. Pierce was on the sidewalk walking towards the intersection. The accident occurred when he reached a point about twenty-five feet away. He said "* * * all at once the Sewerage Water Board truck dashed out of Oak Street * * *". He later corrected this to read Fern Street.
Davis, the driver of the Hanson-Flotte truck, said when he first saw the Sewerage Water Board truck (when it was five or six feet from his truck) it was proceeding at a speed of thirty-five to forty-five miles per hour.
Counsel for plaintiffs attack the credibility of each of these witnesses. They say that Mrs. McCann and Miss Sbisa were obviously not paying attention to the trucks before the accident occurred, because they were having difficulty in opening the front door of Miss Sbisa's residence, and it is thus apparent that they were not noticing what was going on on the street. Counsel also say that both of these ladies testified that their attention was first called to the impending accident by the screeching of brakes and, therefore, since they did not turn towards the intersection until they heard this screeching of brakes, they obviously could not have seen the trucks until just a fraction of a second before the impact.
We do not agree with counsel and it is evident that the trial judge did not agree with them because, as we have already shown, he decided the case largely on the testimony of these two ladies.
Counsel also say that the witness Pierce should not be believed because he became confused during the course of his testimony and obviously gave much incorrect testimony concerning directions, etc. As a matter of fact, the district judge, at the close of his testimony, said that "it is confusion after confusion". That is quite true, and yet a reading of the testimony of this witness leads us to believe that he was relating the facts as he had seen them and that he was convinced that the Sewerage Water Board truck entered the intersection at a very high speed and did not stop or slow down.
Counsel also attack the testimony of Davis, which is to the effect that the Sewerage Water Board truck was traveling at a speed of thirty-five to forty-five miles per hour, charging that he could not have properly estimated this speed since he did not see that truck until it was five or six feet from the point at which the impact occurred. It is true that Davis may not have been able, under the circumstances, to make an accurate estimate of the speed, but surely, he saw the other truck sufficiently in advance of the impact for him to realize that the truck was traveling at high speed, and surely the result of the impact was such as to justify his conclusion that the speed was excessive.
There is much confusion among the experts and eyewitnesses as to the location of skidmarks on the street and as to whether some of the marks which were shown in the pictures were actually skidmarks at all, but we think that the record leaves little doubt that the Sewerage Water Board truck did skid for a considerable distance — approximately thirteen feet — either just before the impact or immediately after it.
There is a physical fact which the experts point to as indicating that the Sewerage Water Board truck had practically stopped when it was struck by the Hanson-Flotte Company truck, and that is, that the Sewerage Water Board truck, after the impact, completely reversed its position, headed in exactly the opposite direction from which it was going when it entered the intersection, and turned over on its right side. This turn, referred to by counsel for plaintiffs, as a "U turn", *Page 662 
was made so sharply that it is very evident that the truck could not itself have rolled in that direction and that something else must have caused it to turn so sharply from its course, to reverse itself and then to turn over on its right side. The experts are of the opinion that this resulted from the terrific force of the blow from the other truck, but we are not certain that if the Sewerage Water Board truck had been stopped or practically stopped, it would have been physically possible for another truck to strike it on its right front wheel a blow sufficiently hard to knock it completely around and then to turn it over on its right side. We think that this would more likely have resulted from its own momentum had the two vehicles come together, as obviously they did, with the right front wheel of the Sewerage Water Board truck and the left front wheel of the Hanson-Flotte truck coming into contact. If the Sewerage Water Board truck was moving at high speed and, if its driver, suddenly realizing that it was about to strike or be struck by another vehicle on its right, turned its wheels as sharply to the left as he could, and the evidence shows that he did this, then the momentum of his own vehicle would have been sufficient after that vehicle was so sharply deflected from its course, to cause that vehicle to overturn towards its right, with the result that it would skid slightly and then reverse its position as this vehicle did and turn over on its right side.
Of course, in making these statements we are indulging in theories just as the experts have done. We are inclined, however, to take the position of the district judge and to say that whatever the theories may be, the testimony of the actual eyewitnesses, who say that they saw the two vehicles enter, both at fairly high speeds, and strike in the middle of the intersection, is much more apt to represent the correct picture of what actually occurred.
[5] We think that the district judge was obviously correct in his conclusion that Sheehan, himself, was guilty of negligence. We disagree only to the extent that we think that the driver of the Hanson-Flotte truck was also guilty of negligence, without which the accident would not have occurred. We conclude, therefore, that there should not have been recovery on the reconventional demand.
The judgment appealed from is amended to the extent that the reconventional demand is now dismissed. In all other respects the judgment appealed from is affirmed at the cost of plaintiffs.
Amended and affirmed.