This suit results from an intersectional automobile collision which occurred at the corner of Dorgenois and Palmyra Streets in New Orleans, at about four o'clock in the afternoon, on December 2, 1946.
Plaintiff, Facio, in his 1940 Pontiac auto-mobile, was on Dorgenois Street going in a downtown direction, and defendant Bellone, in his 1935 Ford coupe, was going in Palmyra Street toward the Mississippi River. Palmyra Street is a one-way street, vehicles being permitted to operate on it only in the direction in which the defendant was driving his Ford. Dorgenois is a two-way street with a single street car track in the center. The two streets are approximately equal in width. On the corner to the right of Bellone and to the left of Facio, that is to say, the intervening corner, there was a building which extended to the property line on both streets making it what is commonly called a blind corner.
Plaintiff charges that the accident resulted solely from the negligence of Bellone in that he was driving his car at an "unlawful and illegal rate of speed, to-wit, about forty miles per hour * * *", and that he failed to stop at the corner "where there is a stop sign, all in violation of Ordinance 13702, C.C.S. * * *."
Plaintiff alleges that the cost of repairing his car was $325.96, and he prays for solidary judgment for that amount against Bellone and the United States Casualty Company, alleged to be the liability insurance carrier of Bellone.
Defendants admit the occurrence of the accident, but deny that Bellone was in any way at fault and aver that the cause of the accident was negligence on the part of plaintiff in "traveling at an unlawful and reckless rate of speed * * *", and they also charge that he was not keeping a proper *Page 449 
lookout and that he entered the intersection "despite the fact that defendant's automobile was in his plain view, and had preempted said intersection * * *." They also averred that in the event it be held that Bellone was responsible for the accident then plaintiff's claim should be reduced to a smaller amount than that prayed for since a lower estimate for making the repairs had been obtained from another garage.
Bellone then assumed the position of plaintiff in reconvention and alleged that the accident was caused by the negligence of Facio as above set forth and that his — Bellone's car — had been so badly damaged that he found it advisable to "trade it in" at a loss of $425.00. He alleged also that he had sustained physical injuries for which he claims $500.00, and in addition thereto, he claims $250.00 as the cost of hiring a truck which was necessary in the conduct of his business.
There was judgment for plaintiff against both defendants solidarily as prayed for and the reconventional demand of Bellone was dismissed. Defendants have appealed.
There can be no doubt that the right of way was with the plaintiff. In the first place, it is admitted that there was a stop sign on Palmyra Street which faced Bellone as he approached the corner. In the second place, Facio was approaching the corner from Bellone's right and therefore even if the two streets were of equal rank, he would have had the right of way, because of the provisions of Ordinance 13702, C.C.S. Article V, 15(a), which read, in part, as follows:
"When two vehicles enter an intersection at the same time the driver of the vehicle on the left shall yield to the driver on the right."
In the third place there was a street car track on Dorgenois Street on which Facio was approaching.
All of these facts are admitted, but Bellone maintains that he could not see the stop sign because it was lower than is usual and was hidden by an intervening parked automobile which was alongside the curb of Palmyra Street. Bellone also maintains that, regardless of whether Facio would otherwise have been entitled to the right of way, he, Bellone, entered the intersection first, thus preempting it, and that, therefore, he had the right to proceed.
The evidence shows conclusively that as Facio approached the corner his speed was not excessive but that the speed of Bellone was quite high. We say that Bellone's speed was high because after the impact, which occurred in the intersection, his car proceeded a distance estimated as great as 30 to 35 feet, turned completely around, and then turned over. The evidence is so overwhelming on this point that we have no difficulty in concluding that Bellone did not stop and that he entered the intersection at high speed when Facio's car had either already entered it or was just about to enter.
It is very true that we have often said that in spite of the right of way provisions of the traffic ordinance, if a vehicle without the right of way enters and preempts an intersection, its driver thus acquires the right to proceed. But in cases in which we discussed the question of preemption we have also said, and other courts have said, that preemption does not result solely from arriving a split second ahead of another vehicle. The driver who claims preemption must show that he entered the intersection at reasonable speed so far in advance of the other vehicle that he would not be struck by the other vehicle also proceeding at proper speed. See Sheehan v. Hanson-Flotte Co., La. App., 34 So.2d 657; Pancoast v. Cooperative Cab Co., La. App., 37 So.2d 452.
There can be no doubt even according to the testimony of Bellone that he did not enter the intersection more than from two to four feet ahead of Facio, and it would be absurd to say that this gave him the right to proceed by reason of the fact that he had preempted it. At the speed at which he was proceeding, he traversed the short distance between the property line and the center of the intersection in a small fraction of a second and surely it cannot be said that preemption resulted. As a matter of fact the evidence leaves us convinced that defendant Bellone in effect admitted his fault to those who were present immediately *Page 450 
after the occurrence. It seems that it was his birthday, and he, therefore, asked the policeman, for that reason, please not to take him to jail. He also made statements to the effect that he had not seen the stop sign, and as this statement was made in explanation of his failure to stop, it is quite evident that his contention that he did stop is not founded on fact. His statement that he was fully protected by insurance, to some extent, indicates a realization that the accident had resulted from his fault.
The contention that the amount claimed by plaintiff is excessive is based on the fact that there had been obtained, apparently by the insurance adjusters of the defendant insurance company, an estimate from another garage which showed that the garage would have repaired the damage to plaintiff's car for $272.00, whereas plaintiff shows that the garage to which he took his car charged $325.96, a difference of $53.96.
Plaintiff shows that the garage which made the repairs was operated by the agent of the manufacturers of his car and that because of the shortage of parts, he felt that he could obtain from them genuine parts and better repair work. We have no doubt that he was within his rights in having the repairs made at that garage. We do not mean to say that a plaintiff may, in all instances, adopt the higher estimate if it appears that it is in excess of some lower one to an unreasonable extent. But where the difference is as small as it was here, we have no hesitation in saying that a plaintiff may select his own repair man, particularly when that repair man is the agent which represents the manufacturer of the particular car in question.
In McCraney v. Hammond Coca Cola Bottling Co., 19 La. App. 755, 141 So. 515, 517, the Court of Appeal for the First Circuit said:
"* * * Plaintiff had the right to have his car repaired by the company from which he had purchased it, and could not be controlled in having the repairs made by a company in which, perhaps, he had no confidence. If the charges of the Capitol City Auto Company were out of proportion to their value, or exorbitant, there would be ground for a reduction of the amount charged therefor, but, as the price demanded is legitimate and the work is satisfactory, defendant is not entitled to a reduction on its plea to have the damages minimized.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.