Edward J. Buwe, Jr., a college student, sustained physical injuries at about noon on April 29th, 1947, when the motorbike on which he was riding and an automobile and trailer owned and driven by defendant, George E. Daste, came into collision at the entrance of an automobile service station located on the upper side of Jefferson Davis Parkway, a few hundred feet on the Mississippi River side of the Washington Avenue crossing, in New Orleans.
Claiming that the accident was caused by the negligence of Daste, Buwe filed this suit in the Civil District Court for the Parish of Orleans, making Daste and his liability insurance carrier, Employers Mutual *Page 174 
Insurance Company of Wisconsin, defendants, and praying for solidary judgment against them in the sum of $18,000.00, with legal interest from judicial demand and costs.
Plaintiff charged that as he was riding his motorbike near the right-hand curb of the upper side of Jefferson Davis Parkway at a moderate speed, and just before he reached the entrance to the said service station, which was on the right-hand side of the street, the automobile of Daste pulling the trailer, passed to his left and suddenly swerved sharply to its right; turning directly across the path of his motorbike and into the driveway of the service station. He alleged that he could not bring his motorbike to a stop before it was struck by the front part of the trailer; that he was caught between the automobile and the trailer and dragged a distance of approximately twenty-five feet into the service station, and that he sustained severe injuries.
He charged that Daste was at fault in failing to maintain a proper lookout; in failing to have his automobile under proper control; in failing to keep to the right, in attempting to pass the motorbike and turn to the right before he had "cleared" it; in failing to give any signal as he attempted to pass; in failing to reduce his speed before making a right-hand turn, and in failing to give a signal indicating an intention to make a right-hand turn. He charged that in these particulars Daste acted in violation of the provisions of the Traffic Ordinance of the City, No. 13702 C.C.S.
The defendants answered, admitting that the Employers Mutual Insurance Company of Wisconsin had issued a policy to the said Daste and that there had been such an accident, but denying that Daste had been at any way at fault.
In the alternative that it might appear that Daste had been at any way at fault, defendants especially pleaded that Buwe had been guilty of contributory negligence in the following particulars:
In operating his motorbike at a fast and unlawful rate of speed;
In failing to keep a proper lookout;
In running into the rear of the automobile of Daste; and
In attempting to pass the said automobile on the wrong side; and in failing to have his motorbike under proper control.
All of these acts of negligence defendants averred were in violation of provisions of the above referred to City Traffic Ordinance.
There was judgment dismissing plaintiff's suit and the matter is now before us on appeal from that judgment.
Young Buwe was at the time a student of Tulane University. He used the motorbike in going to and from his classes. His last class on that day had ended at 11:50 A.M., and he, with a friend, who also had a motorbike, had ridden together to the corner of Bienville Street and Jefferson Davis Parkway. There they separated, and immediately Buwe noticed that some of his books were missing from the rear of his "bike". He says that he decided to "back track" to look for the books. Jefferson Davis Parkway is an extremely wide double thoroughfare, having a very broad neutral ground between the two driveways. On each of these driveways traffic is required to go in only one direction, and therefore, Buwe could not go back on the side of the parkway on which he had been riding. He crossed to the other side and had gone back across Washington Avenue; had passed several large commercial establishments on the upper side of the parkway, and was just about to reach the entrance of the service station when the accident occurred.
His version of the accident is that he had reduced his speed from about twenty to ten miles per hour, and that he was riding near the right-hand curb when
"I noticed a car pull up on my right and swing across my path from left to right. I didn't have time to stop."
Daste tells a different story. He says that he was operating his car, to which the empty trailer was attached; that he intended to turn to his right into the service station and had reduced his speed, and had given a right-hand turn signal by extending *Page 175 
his left hand upwards through the window of the car; that he was near to the right-hand curb and that at no time was the motorbike ahead of or in front of him, and that just as he turned to the right to enter the station, he heard the noise made by the crash of the motorbike into the trailer, the motorbike having come up from the rear.
The record shows that the trailer was used in the transporting of cattle and was so constructed that it partially obstructed the view of the driver when looking through the rear glass of his car or when looking into the rear view mirror. And counsel for plaintiff, though he has not alleged negligence in that respect, contends that in this Daste was at fault, and he directs our attention to section 4 of Article IX of the traffic ordinance which provides that:
"No person shall drive a motor vehicle on a highway, street, boulevard, or roadway which motor vehicle is so constructed or loaded as to prevent the driver from obtaining a view of the highway, street, boulevard, or roadway to the rear by looking backward from the operator's position, unless such vehicle is equipped with a mirror so located as to reflect to the driver a view of the highway, street, boulevard, or roadway from a distance of at least one hundred (100) feet to rear of such vehicle."
Counsel also asserts that Daste was at fault in that he turned to his right without first moving over close to the right-hand curb and that thus he violated the provisions of Article VI, section 3, subsection (a) of the traffic ordinance requiring that:
"The operator of a vehicle intending to turn to the right of an intersection or into an alley or driveway shall approach the point of turning in the traffic lane nearest the right hand edge or curb of the roadway; Giving The Proper Hand Signal Indicating His Intention, and in turning At A Speed Not To Exceed Ten Miles Per Hour shall keep as close as practicable to the right hand curb or edge of the street."
Daste maintains that he could see to the rear to some extent in spite of the obstruction caused by the trailer, and he declares also that he had driven his car to the right side of the road before attempting to turn. He says that his car was only about three feet from the curb as he was making the turn and that just before reaching the service station, he had been required to drive a little further away from the curb in order to go around a stationary car which was parked ahead of him.
He says that, without warning of any kind, the motorbike came up from the rear, its driver, plaintiff, attempting to pass his automobile on its right side, which was in violation of subsection (a) of section 12 of Article V of the traffic ordinance, which reads as follows:
"The operator of a vehicle overtaking another vehicle proceeding in the same direction shall signal with his horn and pass to the left of the overtaken vehicle at a safe distance and shall not again drive to the right side of the highway until clear of such overtaken vehicle."
Daste was placed on the witness stand under cross-examination and he testified as we have already set forth.
We have already discussed Buwe's testimony, but there is other evidence which indicates that immediately after the occurrence, his version was quite different.
Patrolman Lay, a police officer who interviewed Buwe at the Charity Hospital shortly after the accident, says that he asked him how the accident had happened, and was told by the young man that "he ran between the automobile and a little trailer." The officer then testified that he had said:
"Don't you know the laws of traffic? * * * that you must pass traffic on the left, and not on the right?" and that the young man had answered: "Yes, it was my fault, * * *."
Adolph McWilliams, another witness who, at the time, was an employee at the automobile service station, said that immediately after the accident, Buwe said: "I guess I am partly to blame." *Page 176 
George Troyer was placed on the stand as a witness for plaintiff, but he stated that he had seen nothing until after the impact and apparently he did not know whether the automobile had passed the motorbike and then turned to its right, or whether the motorbike had come up from the rear and had crashed into the trailer.
Preston Erskine, a witness on whom plaintiff places much reliance, stated that he saw both the car and the motorbike before the crash and that the "bike" was at first in front but that the car passed it and suddenly turned to the right ahead of it. However, the effect of Erskine's testimony was completely destroyed when it was shown that very shortly after the accident he had signed a written statement in which he had said that the automobile had been in front when
"* * * The motorbike caught up with the trailer and was only two or three feet behind it and to its right, when the car turned to the right into the Texaco Filling Station."
In that statement Erskine also said that the motorbike ran into the right rear bumper of the car. When confronted with that statement, Erskine admitted that he had made it and said that his recollection at the time of the trial of the case was hazy, but that after the event, the accident was very "vivid" in his mind.
As against this evidence the defendants produced in support of Daste's statement another witness, McWilliams, who was positive that the car was near the right-hand curb when plaintiff attempted to squeeze through between it and the curb.
Counsel for plaintiff attempts to persuade us that we should accord little effect to the written statement which was signed by Erskine immediately after the accident and that we should pay little attention to the statements made by young Buwe when interviewed by the police officer, and he directs our attention to two cases, in which the effect to be given to such statements is discussed. He cites Lowery v. Zorn, et al., La.App, 157 So. 826 and Howze v. Hollandsworth, La. App.,26 So.2d 381.
In the first of these cases, one of the persons involved in a collision had made a statement to the effect that he did not hold the other responsible. The court said that whether or not there was responsibility was a question of law and was not to be determined by an expression made by one of the parties.
In the second of these cases, the court said that where a witness made a statement which proved to be contrary to the established facts that statement would not bar recovery. We find no fault with either of these conclusions, but we think that where the established facts are in conformity with what appears in such statements, the statements are highly corroborative and much weight should be accorded them. See Houston Oil Field Material Co. v. Marlow, La. App., 6 So.2d 149
and Facio v. Bellone, et al., La. App., 39 So.2d 448, in each of which it was held that such statements, when they seem to corroborate established facts, should be given much weight.
There is considerable dispute in the briefs and some time was devoted to oral argument to the question of whether the records of the Marine Hospital, without corroboration, should be admitted in evidence. In view of the conclusions we have reached that there is no liability, it is not necessary that we discuss that question.
After a review of all of the evidence, we have no difficulty whatever in concluding, as did the district judge, that the accident was the direct result of plaintiff's attempt to pass or squeeze through on the right-hand side of Daste's car.
We do not see that there was any negligence in Daste, but if he was in any way at fault, the proximate cause of this accident was the negligence of young Buwe.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 217