JANVIER, Judge.
At about 8:30 o’clock on the morning of May 17, 1950, at the corner of Sixth’ and Lafayette Streets in the Town of Gretna, there occurred an intersectional collision of two motor vehicles from which this suit has resulted. One of the vehicles, a 1949 Model Ford V-8, owned and driven by plaintiff, Carlos Velasquez, was on Sixth Street, and the other, a %-Ton Ford pickup truck, owned by Murray-Brooks Incorporated, a Louisiana corporation, and driven by Webb Cain, Jr., an employee, was on Lafayette Street.- As the two vehicles reached the intersection the Ford of plaintiff entered from the right-hand side of the truck. The front of the truck struck the left side of plaintiff’s Ford near its rear, causing the damage to the car and physical injuries of plaintiff on which this suit is based.
Both streets are two-way streets, but on Sixth Street, facing plaintiff as he approached the intersection, there was a “Stop” sign which had been erected by. the *682 Police Department of the Town of Gretna. Vehicles on that street were required to stop before entering the intersection of Lafayette Street.
Aetna Casualty and Surety Company had issued to Murray-Brooks Incorporated a policy of liability insurance, and plaintiff, Carlos Velasquez, alleging that the accident resulted from negligence on the part of Cain, brought this suit against both Murray-Brooks Incorporated as owner of the truck and Aetna Casualty and Surety Company as liability insurance carrier, and prayed for solidary judgment against both defendants in the sum of $14,364.11.
The charges of negligence are that the driver of the truck did not yield the right-of-way to the plaintiff although, having preempted the intersection, he was entitled to it; that the truck had entered or was about to enter a school zone and should have been proceeding at a very slow rate of speed, whereas it was actually driven at an excessive speed and “in a manner suggestive of a lack of control * * *, or a disregard of the rights of others *
The defendants, admitting the occurrence of the accident, denied that the driver of the truck was in any way at fault, averred that the cause thereof was the negligence of Velasquez himsel'f in the following particulars: That he failed to bring his vehicle to a stop before entering the intersection ; that he drove into the intersection at an excessive rate of speed; that he entered the intersection, “which is a. blind corner, without first making certain that the maneuver could, be accomplished in safety”; that he failed to see the approaching trade or was negligent, if he did see it “in leaving a place of safety and driving directly into the path of the said truck at a time when a collision was unavoidable.” These alleged acts of negligence of plaintiff were also pleaded in the alternative as evidencing contributory negligence.
In the Twenty-fourth Judicial District Court for the Parish of Jefferson there was judgment in favor of defendants, dismissing the suit, and the matter is now before us on appeal by plaintiff.
One fact stands out above all others and that is that the corner which intervened between the drivers of the two vehicles was what is customarily referred to as “blind.” Neither driver could see the other vehicle until he had almost entered the intersection because, in addition to the building which was on the property line of both streets, there were “cars and trucks parked on the street at Lafayette Street,” which obstructed the view.
Plaintiff says that he stopped at the “stop” sign and then proceeded at a very slow rate of speed to enter the intersection and that when “one-third (%) of the car, at the most, would be on Lafayette Street,” he saw the truck which, at that time, was about 200 feet from the intersection; that he did not know how fast the track was traveling. He then added: “ * * * I evidently misjudged his distance, * *.”
Webb Cain, Jr., the driver of the truck, says that as his truck approached the intersection its rate of speed was around “20 to 25 miles an hour.” John D. Marine, the police officer who arrived on the scene shortly after the occurrence, says that he spoke to Cain and that Cain said that “he could not have been going much over 25 miles per hour.” Cain also says that as he was proceeding “under normal conditions” plaintiff’s car entered the intersection “without paying heed to a Stop sign”, and that he immediately applied both the foot brake and the hand brake and sounded his horn, but that before the truck could be brought to a complete stop, the other car had reached a point directly in front of the truck and was struck on its left side.
The record shows that the truck stopped at the point of impact, but that the car of plaintiff proceeded entirely across the intersection and came to rest on the sidewalk against a mail box on the far side of the street.
It appears that just beyond the intersection there was a school crosswalk, and, though there is no ordinance offered in evidence nor anything else to show just what precautions should have been taken as a result of the fact that the truck was *683 approaching this walk, it is argued that the speed of the truck should have been reduced.
It is also shown that as a result of the sudden application of its brakes, the truck skidded a short distance — Cain says between seven and ten feet; the police officer says that the skid marks were about twenty feet in length but that "they were not too extra heavy.”
It is possible that the speed of the truck may have been slightly in excess of the rate which should have been dictated by prudence, but it is not necessary that we reach a conclusion on this question of fact for the evidence leaves no doubt at all that Velasquez himself was at fault and that without his fault the accident could not have occurred. It is very evident that if Velasquez stopped at the Stop sign, and there -is most grave doubt of this, he unquestionably, entered the intersection without taking any precaution whatever to ascertain whether the crossing could be completed in safety. The more dangerous the situation, the greater should have been his care.
Under somewhat similar circumstances, we said in Porter, for and on Behalf of Porter v. De Boisblanc, La.App., 64 So.2d 864, 865:
“ * * * If Porter, who was on the less favored street actually did stop at the corner, he discharged but a part of the legal duty imposed upon him. He was required to go further than merely coming to a stop. The action of stopping must be followed by a careful appraisal of traffic on the right-of-way street, and no entry should have been made therein unless conditions clearly warranted it. Harrell v. Goodwin, La.App., 32 So.2d 758. It is obvious that Porter, without keeping a proper lookout, heedlessly drove out into the Poydras intersection and placed himself in imminent danger of colliding with on-coming traffic.”’
The mere fact that Velasquez was-able to drive his car into the intersection ahead of the truck does not indicate that he had preempted the intersection and' was entitled to the right-of-way. In Sheehan v. Hanson-Flotte Co., La.App., 34 So. 2d 657, 660, we said:
“When we use the word ‘preempt1, we do not attribute to it the meaning which counsel for plaintiffs seem to understand that it has. It does not mean that, where one vehicle, by traveling at an excessive rate of speed, is able to enter the intersection when the other which is approaching it is still a few feet away, the first has preempted the intersection and is entitled to cross regardless of what may otherwise have been the right ■ of way. It does not mean that two drivers may race to see which can enter first and that then the one who does enter first may say that he has established his preemption. It merely means that if two vehicles approach an intersection at proper speeds and with the exercise of ordinary precautions and yet one enters sufficiently in advance of the other to justify the belief that it may continue across without danger, it may do so regardless of the fact that the other has approached from the right and would have had the right,of way but for-the advance position of the first.”
Our conclusion is that, regardless of whether or not the driver of the truck may have been at fault, the cause of the accident was the negligence of Velasquez himself. Consequently, the judgment appealed from' is affirmed at the cost of appellant.
Affirmed.