GLADNEY, Judge.
This action is in tort against the liability-insurance carrier of A. D. Kile to recover for property damages to a G.M.C. truck and for personal injuries received by Luther Lewis as a result of an intersec-tional automobile collision in Natchitoches, Louisiana.
The accident occurred on the night of November 19, 1952, between 7:00 and 7:30 o’clock P.M. when plaintiff, Luther Lewis, entered the intersection of North and Lake Streets while proceeding easterly aiming to make a left turn and continuing along North Street. At about the same time Coy D. Kile, the nineteen year old son of defendant’s insured, drove his father’s Ford into the intersection from the north side of North Street and observing the truck, turned his car toward the left in a futile effort to avoid the collision which took place in the southeast quadrant of the intersection near the east line of North Street and south line of Lake Street. Both cars came to rest almost at the point of impact. Plaintiff’s G.M.C. truck was damaged to the extent of $271.41. In addition to this sum recovery of $5,000 is sought for personal injuries and expenses incurred in connection therewith.
After trial judgment was rendered in favor of plaintiff for $1,271.41, from which decree defendant has prosecuted suspensive and devolutive appeals. Plaintiff has answered the appeal, praying the award be increased to the amount claimed.
Plaintiff would impose liability on appellant by alleging young Kile was negligent: (1) in driving his automobile in excess of the speed limit of 25 miles per hour; (2) in not maintaining a proper lookout; (3) in not having his car under proper control; (4) in driving a car with faulty brakes; and (5) by leaving his lane and crossing to the wrong side of the street. In its answer defendant denies any negligence by Kile and asserts the proximate cause of the accident was due to the negligence of Lewis in several particulars: (1) in failing to timely observe the Ford; (2) in prematurely entering the intersection directly in its path; (3) by failing to accord the right of way granted in favor of traffic on North Street; (4) by not having his truck under proper control; and (5) by failing to apply his brakes and permit the Ford to pass in front of him. Alternatively, defendant pleads contributory negligence on the part of plaintiff, with negligence predicated on the above specified charges, and further in the alternative, defendant has urged application of the last clear chance doctrine.
The court, therefore, is called upon to decide whether one or both of the motorists are guilty of negligence, and to determine the validity of the pleas of contributory negligence and the applicability of the last clear chance doctrine. As presented in this court appellee’s chief complaint is that the driver of the Ford was traveling at an excessive rate of speed and appellant complains mainly that Lewis attempted to permaturely cross the intersection from an unfavored street.
A surveyor’s plat to scale furnishes evidence of important physical features affecting the issues herein. North and Lake Streets each has a total width of 40 feet. North Street, north of the intersection, has a black top surface 22% feet wide. Lake Street is graveled to about the same width. The intersection proper is black topped. Along the north side of Lake Street upon the right of way a thick hedge grows from 5 to 12 feet high. It extends a distance of 90 feet west from the northwest corner of the intersection. The effect of this is to create a blind corner as to traffic approaching eastward along Lake Street and to traffic going south on North Street.
Mr. Lewis, an elderly man of seventy years, testified he was driving his 1951 G.M.C. pick-up truck east along Lake Street and as he came to North Street he stopped 6 feet to 8 feet west of the stop sign located there; that before going forward he looked for approaching traffic without observing any except he saw the lights of a car reflected some distance up North *671 Street as a car turned from Amulet Street into North Street, and believing he could safely cross he started his car in low gear and shifted to high, skipping the second gear. He testified: “ * * * After I pulled out there I saw there was a car coming at a good speed and I decided to go on across instead of turning to my left.” He estimated the speed of the approaching car at 35 miles per hour and his own speed at from 10 to 15 miles per hour. On cross-examination he explained the lights which he first saw were made, he believed, when the Kile car made a turn from Amulet into North Street some 400 feet away. He related when he was a little over half way across the intersection he saw that he could not make a left turn into North Street and decided to go straight over into Lake Street and then he accelerated his car. At that point he estimated the Kile car to be 50 feet away. He stated that after entering the intersection he did not apply his brakes prior to the collision.
Mrs. Ada Dorfer, a pharmacist, testified that she was half a block away driving east on Lake Street when she saw the two cars collide. She testified she saw Lewis stop and then start across and when he was beyond the middle of North Street he was struck by the Kile car which came at a fast speed. She said she did not see the Ford car prior to the collision but only the reflection of its lights, but changed her testimony to relate she saw the automobile as it came into the intersection. Plaintiff produced four other witnesses, none of whom saw the collision, but all testified as to the relative positions of the vehicles following the collision. Their testimony uniformly establishes that the point of impact occurred within the southeast quadrant of the intersection near the east line of North Street. T. J. Sibley, one of these witnesses, also testified that the Ford car left skid marks leading to the point of collision twenty-two measured steps in length.
Defendant produced only two witnesses, Coy Kile and Bates Moore. Kile testified he had gone to the drug store for some medicine for his father, that he had turned into North Street from Amulet Street, one block (400 feet) north of and parallel to Lake Street, and from that point he came south toward the intersection where the collision occurred at a speed of from 20 to 25 miles per hour. He said he did not see the Lewis truck until he was entering the intersection, and faced with an emergency he decided his best chance of avoiding a collision was to turn left toward the vacant lot on the southeast corner of the intersection. He applied his brakes but nonetheless the right front of his car struck the left front of the truck. He said he began to apply his brakes prior to entering the intersection.
Moore, a passenger in Kile’s automobile, was reluctant to estimate the speed of the Ford automobile but said he thought they had been traveling about 25 miles per hour and were going at approximately that speed when they entered the intersection. He testified, but not positively, that the truck was about half way into the intersection and he saw it about the time the Ford reached the intersection. Moore was hurt about the face in the accident and does not seem to have too clear a recollection of justf what did happen.
In holding Kile negligent, evidently the court a qua based its decision upon the testimony of Sibley that the skid marks of the Ford measured twenty-two steps or 66 feet. This evidence is not contradicted except by inference from the testimony of Kile and Moore who estimated the speed of the Ford at 20 to 25 miles per hour. H. B. Barrett’s tables relating to speeds and stopping characteristics of motor vehicles show clearly we must find unsatisfactory either the testimony of Sibley or that of Kile and Moore. See article entitled “Mechanics of Control” by H. B. Barrett, 14 T.L.R. 503, which has been uniformly recognized and accepted by our courts. Our reason for this conclusion is if we accept Sibley’s testimony the Ford skidded 66 feet under prevailing excellent weather and pavement conditions, it was making not less than 40 miles per hour when the brakes were applied. This is evident when we accept 66 feet as the net braking distance since the stopping distance, including reac *672 tion time of % of a second, adds about 43 feet to make a total of 109 feet from the point where Kile first sought to bring his vehicle under control to the point of impact. We understand, of course, Kile was not this far away from the truck when he saw it because both vehicles moved some distance after the drivers became aware of the emergency, but we cannot escape the inference the Ford was nearly 40 feet north of the intersection when its driver undertook to apply his brakes. By again referring to the Barrett tables it is to be seen that at a speed of 25 miles per hour the stopping distance including reaction time would only be 53 feet. Manifestly, Kile and Moore were in error in their estimate of the Ford’s speed, for if we accept Sibley’s testimony the net braking distance was 66 feet. Since the speed limit was 25 miles per hour it is clear the speed of the Ford would be a contributing, if not the proximate cause of the accident.
Another factor bearing upon our decision is the presence of the high hedge along the north side of Lake Street which created a blind corner as to both motorists. Photographs plainly indicate at least one of the approaching drivers must get beyond the hedge to be visible to the other. We believe this fact lends credence to a finding that Lewis entered the intersection well ahead of Kile. Lewis says Kile was about 50 feet away when he observed him. Moore testified the truck was about halfway across North Street when he noticed it, at which time the Ford was about 25 feet from the intersection. Kile testified he applied his brakes 10 or 15 feet before he entered the intersection. It is our finding Kile was going in excess of the legal speed limit of 25 miles per hour. Facing southbound traffic on North Street is a “Slow” sign which perhaps required of Kile an even slower lawful speed.
Pointing out that North was the favored street over Lake, appellant contends Lewis was grossly negligent in attempting to cross it without making certain of a safe passage. That Lewis did stop before entering the intersection is corroborated by Mrs. Ada Dorfer and is not to be seriously questioned. We are of the opinion under the facts above related Lewis preempted and was entitled to continue across the intersection and the sole and proximate cause of the accident was the excessive speed of the Ford automobile.
Counsel for appellant argues that our decision in McCollister v. Gatti, La.App.1953, 64 So.2d 447, is controlling. Certain facts in the cited case which had an important bearing on our decision holding negligent the driver on the less favored street are not present in the instant appeal. The intersecting streets were Wichita and Creswell in Shreveport, respectively 27' 10%" and 36'2" in width. It was raining with visibility of less than 100 feet and there plaintiff established his speed to be 20 miles per hour and also that he sounded his horn. Although a blind corner was also present it was shown the driver of Gatti’s car on the unfavored street could have seen Mc-Collister nearly 100 feet away before commencing his crossing. These facts, we think serve to distinguish the cited case.
The instant case, we think, falls within the rule so aptly stated in Blash-field’s Cyclopedia of Automobile Law and Practice, permanent edition, Vol. 2, par. 1029:
“An automobilist, against whom the traffic regulations with reference to intersectional rights of way operate, and who, in consequence thereof, is under a duty to respect the right of way of those whose path the road he is traveling crosses, is nevertheless not required to anticipate that a driver having the right of way will violate traffic regulations or will cross an intersection without slowing down as required by law.
“On the contrary, although not having the right of way, he is nevertheless entitled to assume that approaching vehicles or drivers so favored are not approaching at a negligent rate of speed, or in violation of law, and may assume, until the contrary appears, that such a motorist will operate his car with the care ordinarily displayed by a *673 reasonably prudent person and will comply with the-regulations applicable to the use of the highway.”
See also Sheehan v. Hanson-Flotte Co., La.App.1948, 34 So.2d 657; Facio v. Bellone, La.App.1949, 39 So.2d 448; and Moore v. Co-Operative Cab Co., La.App. 1952, 56 So.2d 285.
According to the testimony of Kile he regarded the collision as inevitable and this factor caused him to apply full pressure on his brakes. He testified:
“Q. How far did you travel like that, before you applied your brakes hard enough to skid your wheels? A. Well, I swerved to the left and when I saw he was going to hit me, anyway, I—
“Q. Then you showered down on your brakes? A. Yes, sir, just right — •
“Q. About how far had you traveled before you applied such pressure to your brakes that 'your wheels skidded? Twenty-five feet? Thirty feet? A. Well, I’d traveled from where I said I saw the car, swerved to the left until I got on the left-hand side of the street about entering Lake Street, and then I hit my brakes.
“Q. Well, would you say that would be thirty feet? Forty feet? A. Well, I don’t know exactly how many feet it
Lewis, after he was in the middle of the street and upon seeing the Ford bearing down upon him, “decided to go on across instead of turning to the left.” When he made this decision he was hardly more than 20 feet from the east side of North Street. As Kile had turned left to avoid the truck, if Lewis in fact had turned left, the cars would have only collided with greater force. 'Had Lewis applied his brakes and come to a stop it appears to us he would still have been in the path of the Ford. These findings have persuaded us appellee should not be charged with contributory negligence. The circumstances likewise prevent application of the last clear chance doctrine.
The medical evidence, we think, fails to prove that Mr. Lewis suffered a fractured rib or any other broken bones. He was bruised about the chest, but does not seem to have sustained any serious injuries. His chest no doubt caused him considerable pain -and anxiety for several weeks. Because of his age his body would naturally mend more slowly than that of a younger person. The trial court awarded the sum of $1,271.41 inclusive of the repairs to the truck amounting to $271.41. It is our opinion the judgment should be amended by reducing the awards to $771.41.
It is therefore ordered that the judgment from which appealed be amended to allow $771.41, and as amended, it is affirmed at appellant’s costs.