**PANNELL v. CONSOLIDATED PARCELS,**
**Inc., et al.** *
**No. 16162.**

Court of Appeal of Louisiana. Orleans.
Nov. 18, 1935.

James W. Hopkins and John May, both of New Orleans, for appellant.

Gordon Boswell, of New Orleans, for appellees.

WESTERFIELD, Judge.

James F. Pannell brought this suit against Consolidated Parcels, Inc., and its insurance carrier, Allstate Insurance Company, claiming $4,009 as damages for physical injuries alleged to have been sustained as a result of the negligence of a servant of the defendant Consolidated Parcels, Inc. The defendant Consolidated Parcels, Inc., reconvened claiming $250.80 as damages to its motortruck.

From a judgment dismissing both the original and reconventional demands, plaintiff has appealed.

On June 23, 1934, at about 5:30 p. m., Pannell was driving a Plymouth automobile belonging to his employer, Harry Bros. Company, down S. Galvez street in the direction of Canal street when, as he crossed the intersection of S. Galvez and Poydras streets, a Ford truck belonging to the defendant Consolidated Parcels, Inc., which we shall hereafter refer to as the defendant, and driven by its servant, Clarence Henry, violently collided with the Plymouth in which plaintiff was riding causing him to suffer the injuries described in his petition.

The negligence imputed to defendant's servant consists in his alleged failure to accord plaintiff the right of way; failure to keep a proper lookout and excessive speed. The counter charges of negligence attributed to plaintiff, as stated in the answer, are quite numerous, but may be said to be somewhat condensed by the argument made and the brief filed in this court so as to be limited to excessive speed, the violation of the State Highway Act No. 21 of 1932 and the City Ordinance No. 13702, C. C. S., with particular reliance upon the alleged violation of the highway act and, in the alternative, contributory negligence.

■ We experience no difficulty in reaching the conclusion that defendant's serv-

*Rehearing denied Jan. 13, 1936.

**168**

ant, Henry, the driver of the Ford motortruck, was negligent. This was the finding of the learned judge, a quo, and it is amply justified by the evidence. Henry was driving too fast, some witnesses saying 50 miles an hour and Henry, himself, conceding it to have been in excess of the legal limit. He maintained his rapid pace without abatement up to the point of contact with the plaintiff's automobile and, after the collision, his truck proceeded across four railroad tracks, which are on the neutral ground dividing Poydras street, for a considerable distance before coming to a stop. Moreover, the Plymouth, which was running slowly, about 8 miles per hour, was in plain view of Henry for a considerable period of time before he reached the intersection of Poydras and S. Galvez, having almost completed the crossing of the roadway, and being near the neutral ground when struck by the defendant's truck.

The judge, a quo, whose reasons for judgment are found in the record, was of the opinion that plaintiff was guilty of contributory negligence because of his failure to observe Rule 17 of the State Highway Act (No. 21 of 1932, § 3), which reads as follows:

"(a) It shall be the duty and obligation of every person owning, driving, operating, or causing or permitting a vehicle to be so driven or operated, when approaching at grade a crossing of a public street, road or highway with any steam, electric, street, interurban or other railroad or tramway, operated upon fixed rails or permanent track, to, upon his own responsibility, bring such vehicle to a full and complete stop at such a place, in such a manner and for a sufficient period of time to enable the driver or operator thereof to observe the approach of trains or cars thereon, by looking up and down said track in both directions and by listening therefor, and before proceeding thereon or thereover. In the event it is impossible so to do, then such persons shall proceed only with the greatest caution and at their peril."

A brief description of the locus in quo is necessary. South Galvez street is a boulevard about 100 feet wide, with a neutral ground in the center and a paved roadway on each side. Poydras street is about 155 feet wide separated by a neutral ground on which there are a number of railroad tracks used by the Illinois Central Railroad. The upper or south side of Poydras street is paved and the lower or north side is unpaved. Vehicles traveling both ways, east and west, on Poydras street, use the south side or paved portion of the street. On the pavement on South Galvez street there is a sign reading "Dangerous, Go Slow." The corner of S. Galvez and Poydras streets is said to be a "blind corner" because of the character of the buildings which form the property lines in the intersection. The width of this roadway is 40 feet. Counsel contends that rule 17 of the highway act makes it the duty of a motorist to stop before entering the paved roadway of Poydras street or when 40 feet distant from the nearest railroad track. On the other hand, opposing counsel argues in the first place that there is no obligation to stop at any particular point, but only "at such place, in such a manner and for a sufficient period of time to enable the driver * * * to observe the approach of trains or cars thereon [railroad tracks]," and that the obligation to stop is qualified by the concluding phrase in the rule reading, "in the event it is impossible so to do, then such persons shall proceed only with the greatest caution and at their peril"; that Pannell's failure to stop at the intersection of the paved roadway, which is admitted, if a violation of the highway act, was not a contributing cause of the accident; and, finally, that since the section of the highway act referred to was not intended as a protection to motorists driving along Poydras street parallel to the railroad tracks, a violation of the ordinance cannot be considered negligence. Sections 111 and 113, Corpus Juris, vol. 45, verbo "negligence," read:

"Sec. 111. b. *Purposes to Be Accomplished—(1) In General.* In determining whether there has been such violation of a statute or ordinance as may constitute negligence regard must be had to the purpose of the enactment, the dangers against which it was intended to afford protection, and the injuries which it was intended to prevent, and it cannot be extended by construction so as to impose a duty beyond that which it was the legislative intention to impose. Accordingly, if none of the consequences which the statute or ordinance was intended to guard against have ensued from its violation, such violation does not amount to negligence, even though some other injurious consequence

has resulted; but in such case the liability, if any, must rest solely on common-law negligence. It has been held that violation of a statutory duty may be a material fact and evidence of negligence, even though the injury complained of is not within the purview of the statute, but there is also authority for the contrary view, and it is clear that, where a statutory duty is imposed for purposes other than the protection of persons and property, noncompliance therewith can have no bearing upon the question of negligence."

"(Sec. 113) c. *Persons to be Protected.* —(1) *In general*—In order that violation of a statute or ordinance may constitute negligence it is necessary that the duty created thereby should have been for the benefit of, or should have been owed to, the person claiming to have been injured through the violation, that is, he must be a person for whose protection the statute or ordinance was designed. * * *"

There is some contention, but we believe no doubt, concerning the application of the highway act to city streets. The act itself defines the term "highway" as every "place of whatever nature open to the use of the public, for the purpose of vehicular traffic." Loewenberg v. Fidelity Union Casualty Co. (La. App. 2d Circuit) 147 So. 81.

The rule with respect to vehicles approaching a railroad crossing at grade (rule 17) requires a full stop "at such place, in such a manner and for a sufficient period of time to enable the driver or operator thereof to observe the approach of trains or cars thereon * * * before proceeding thereon or thereover." Counsel for defendant contends that compliance with this provision of the rule necessitated the plaintiff stopping his car before entering the paved roadway of the uptown or south side of Poydras street when about 40 feet distant. It seems to us, however, that this interpretation is unsound because, to stop at that distance from the track would not afford as great an opportunity for observation of an approaching train, to the driver of the vehicle intending to cross as would be the case if he stopped nearer the rails on which the train was being operated, and, also, with greater reason because there is no requirement in the statute to that effect. The distance from the track where the stop should be made is not mentioned.

It must be made "at such place" as will enable the driver to see the approaching trains. In this instance, if Pannell had stopped after having entered the intersection of Poydras street at a point where he might observe an approaching train, he could not be deemed guilty of negligence based upon a violation of this section of the act. He was struck by defendant's truck a short distance from the nearest railroad track and while there was still an opportunity to stop and look. If it be said that this construction of the act would involve considerable danger to the vehicle stopping in the intersection of the two paved highways, the answer is, in the first place, that the act does not require anything more and, in the second place, it permits the crossing of the railroad tracks without stopping "in the event it is impossible so to do." Moreover, to require all vehicles to stop before entering the nearest roadway of a street like Poydras street, divided by a neutral ground upon which railroad trains are operated, as a protection or precaution against the danger of moving trains, would be absurd because many vehicles enter similar intersections intending to make a right turn and this particular intersection for the purpose of making a right or left turn and driving along the intersecting street towards their objective, without crossing the tracks at all.

Pannell, in our opinion, was not guilty of a violation of rule 17 of the highway act.

Article V-3, subdivision (b), of Ordinance No. 13702, C. C. S., provides:

"*Restrictions as to Speed.* Fifteen miles an hour when approaching within fifty feet of a grade crossing or any steam * * * railway, when a driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last one hundred feet of his approach to such crossing he does not have a clear and uninterrupted view of such railway crossing and any traffic on such railway for a distance of two hundred feet in each direction from such crossing."

And article 1 of the same ordinance reads:

"*Definitions*: Wherever the word 'slow' appears in the ordinance or on any official traffic sign it shall be mandatory that the speed of a vehicle shall not exceed eight miles an hour."

Conceding that Pannell's view was obstructed as he approached the intersection of Poydras street because of its being a "blind corner," the evidence concerning his speed clearly preponderates to the effect that he was going very slowly and not more than 8 miles an hour.

Our conclusion is that plaintiff was not guilty of contributory negligence. He entered the intersection when the truck of defendant was three-quarters of a block away. He had almost completed the crossing of the nearest roadway. He was in plain view of the defendant's servant, the driver of the truck, for an appreciable length of time, amply sufficient to enable him to avoid the collision. Plaintiff's action in crossing when he did was that of a reasonably prudent person. He was not obliged to await the passage of the truck. See Crozat v. Toye Bros. Yellow Cab Co. et al. (La. App.) 145 So. 60; Simpson v. Pardue, 15 La. App. 341, 131 So. 854.

▪ Plaintiff itemized his damages as follows:

For pain and suffering ......... $2,000.00
Future suffering, permanent injury and scar .............. 2,000.00
Damages to eyeglasses and radio in automobile ............... 9.00
_____
Total ................... $4,009.00

Pannell's injuries consisted of a concussion of the brain, a cut on the forehead, and contusions on his body and legs. He spent several days in a hospital and was partially disabled for about a month. The scar on his forehead which, it is said, will be permanent does not seem to be particularly disfiguring. We believe an allowance of $1,500 for all items of damages claimed will be a proper award.

The Travelers Insurance Company have intervened under section 1 of Act No. 247 of 1920, claiming $109.85 as medical and hospital expenses paid on behalf of plaintiff, plus a reasonable attorney's fee which, it is agreed, should be fixed at $25, or an aggregate amount of $134.85, which is admitted to be the correct amount due it in the event of judgment being awarded plaintiff. This sum must be deducted from the $1,500, the amount we have fixed upon as damages to be awarded plaintiff.

For the reasons assigned, the judgment appealed from in so far as it dismisses plaintiff's demand is annulled, avoided, and reversed and it is now ordered that there be judgment in favor of plaintiff, James F. Pannell, and against the defendants, Consolidated Parcels, Inc., and Allstate Insurance Company, in solido, in the sum of $1,365.15, with legal interest from judicial demand until paid and for costs.

It is further ordered that there be judgment in favor of intervener, Travelers Insurance Company, and against the defendants, Consolidated Parcels, Inc., and Allstate Insurance Company, in solido, in the sum of $134.85, with legal interest thereon from the date of that judgment and for the costs of the intervention.

In all other respects the judgment appealed from is affirmed.

Affirmed in part.

Reversed in part.