**GUERNSEY et al. v. TOYE BROS. YELLOW CAB CO., Inc., et al.\***

**No. 16425.**

Court of Appeal of Louisiana. Orleans.

Feb. 8, 1937.

\*Rehearing denied March 22, 1937.

460

Friedrichs, Connolly & Simoneaux, of New Orleans, for appellants.

David Sessler, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for damages for personal injuries alleged to have been sustained by plaintiffs, Mrs. Gertrude Hart, wife of John W. Shannon and Mrs. Amelia Shropshire, wife of Eustace J. Guernsey, as a result of a collision between a taxicab in which they were riding and a La Salle automobile driven by E. S. Gilmore. Mrs. Guernsey sues for $4,932.05, of which amount $432.05 is alleged to have been the cost of medical services and hospital expenses. The balance claimed, $4,500 is alleged to be due because of pain and suffering. Mrs. Shannon claims $2,650.37, $150.-37 being for medical expenses and hospital charges, and the remainder, $2,500 for pain and suffering. The suit was brought against Toye Bros. Yellow Cab Company, Inc., as the owner and operator of the taxicab, and E. S. Gilmore, as the owner and driver of the La Salle automobile.

The defendant Gilmore failed to answer, and the case appears to have been abandoned as to him.

Following a trial upon the merits there was judgment dismissing the suit as against the other defendant, Toye Bros. Yellow Cab Co., Inc., no mention being made in the judgment of the codefendant Gilmore. From this judgment plaintiffs have appealed.

The accident which forms the basis of this suit occurred on August 15, 1934, at about 5 p. m. when a yellow cab operated by the defendant collided with a La Salle sedan owned by the codefendant, Gilmore, at the intersection of Gravier and S. Liberty streets. Mrs. Shannon and Mrs. Guernsey, the plaintiffs, were passengers in the taxicab.

The charges of negligence imputed to the driver of the taxicab are as follows:

1. Violation of section 2 of article 12 of the Traffic Ordinance of the city of New Orleans, No. 13702 C.C.S., in that he misrepresented his age as being 21 years in order to obtain a chauffeur license when, as a matter of fact, he had not attained that age, being but 20 years old.

2. Failure to keep his cab under control so that it might readily be stopped in an emergency.

3. Failure to keep a proper lookout when approaching a "blind corner" at the scene of the accident, in violation of subdivision (b) of section 3 of article 5 of the Traffic Ordinance of the city of New Orleans, No. 13702 C.C.S.

According to the version of Henry C. Scott, the driver of the taxicab, who admitted that he had overstated his age in his application for a license, the accident happened as follows:

The taxicab, which was proceeding out Gravier street towards the Mississippi river, approached the S. Liberty street intersection and slowed down almost to a standstill, sounded its horn, and, as it reached the curb line of S. Liberty street, Scott, its driver, looked out S. Liberty street and saw the La Salle sedan "between 100 and 150 feet up S. Liberty" and approaching the intersection at about 40 miles an hour. The taxicab continued on its course, its speed being reduced to 5 miles per hour because, says Scott, "I knew I had a lot of time to cross that street, very narrow, so I proceeded on across." (S. Liberty street is 24 feet wide.) The La Salle, without abating its speed or changing its course, kept coming towards the cab and collided with it just beyond the center of the intersection, the front portion of the automobile striking the rear right fender and wheel of the taxicab, knocking it against the river side curb of Gravier street.

The codefendant, E. S. Gilmore, testified on behalf of the plaintiffs that he was driving his La Salle car along S. Liberty street and approached the intersection of Gravier street driving at the rate of 12 or 13 miles per hour and that he did not see the cab until he had "cleared the corner," (mean-

ing, we suppose, after he had passed the property line) and collided with it in the center of the intersection, or rather, as he puts it, the cab struck him at that point.

Anthony Gomez, who was a passenger in the Gilmore car, testified on behalf of defendant. Gomez stated that the Gilmore car approached the intersection very rapidly (35 or 40 miles per hour), and that when it reached a point between 50 and 100 feet from Gravier street he saw the cab in the intersection and called Gilmore's attention to it; that Gilmore slowed down his speed momentarily and then "gave it gas and he picked up and piled into the cab and put it on the curb." He also stated that there was plenty of room in the rear of the taxicab to permit Gilmore to pass in safety.

The two plaintiffs, who were in the taxicab at the time, knew nothing about the manner in which the accident occurred.

The question of whether the Gilmore car was negligently operated does not concern us, since that issue is not before us. The only question for our determination is the negligence, vel non, of the driver of the taxicab.

We are much impressed by the statement of Judge Linn of the superior court of Pennsylvania in the case of Brayman v. De Wolf, 97 Pa.Super. 225, to the effect that in all cases of intersectional collisions between automobiles, both drivers are perhaps at fault and on our own part we will go so far as to say that, as a rule, such collisions could be avoided if the driver of either vehicle exercised proper care and caution. There are exceptions, however, and under certain circumstances the entire blame for the collision can be fixed upon one of the drivers. It is not necessary in order to be held blameless for a resulting collision for a driver to await the clearance of all visible traffic before entering an intersection. The rule, as has often been stated by this and other courts, is to the effect that the propriety of a driver's action in entering an intersection in the face of approaching vehicles on the intersecting street must be determined by the special circumstances obtaining, and, if his action in so doing be that of a reasonably prudent person, no fault can be imputed to him. This was the holding in Hamilton v. Lee (La.App.) 144 So. 249, Simpson v. Pardue, 15 La.App. 341, 131 So. 854; Bethancourt v. Bayhi et al. (La.App.) 141 So. 111; Pannell v. Consolidated Parcels, Inc. (La.App.) 164 So. 167.

In considering whether Scott, the driver of the taxicab, was imprudent, and, therefore, negligent in attempting to cross S. Liberty street, we can do him no injustice by accepting his own statement as to the situation confronting him and his reasons for believing that he might cross the intersection in safety. He says that he drove into S. Liberty street at the rate of 5 miles per hour when the La Salle car was between 100 and 150 feet away and approaching at a speed of 40 miles per hour. Accepting this statement at face value, we observe that if the speed of both vehicles remained constant, both of them would have reached the middle of the intersection in about two seconds, S. Liberty street being, as we have said, 24 feet wide. We realize that with the exception of the width of S. Liberty street, which is an actual measurement, other figures such as the distance of the La Salle car from the corner as well as the speed at which it was traveling and the speed of the taxicab are but estimates, and that, therefore, we cannot be certain that all factors in our mathematical calculation are true, nevertheless, they are estimates of defendant's driver and may be fairly considered in determining the reasonableness of his conclusion that he might undertake the crossing in safety. As a matter of fact, we believe he was mistaken concerning the speed of the La Salle car and perhaps, also, in reference to his own speed, for the damage to both vehicles was slight and the impact apparently not very violent, as neither vehicle was overturned, and, by the same token, he might easily have been mistaken as to the distance of the La Salle car from the corner, for it might have been, and probably was, nearer than he placed it. Gomez, who was riding with Gilmore in the La Salle, very plainly involves Gilmore with fault in connection with the accident, but his statement, if true, would merely prove that Gilmore was negligent and, as we have said, we are not concerned with Gilmore's responsibility, as he is not before the court.

Scott should have waited for the Gilmore car to pass. It was approaching the intersection from his right and therefore had the right of way. (Section 10 of article VI of the Traffic Ordinance No. 13702 C.C.S.) The right of way, however, is not a determining factor but a circumstance requiring additional care on the part of the driver on the less favored intersecting street. Scott's main fault, for which

we find him negligent, was in entering the intersection at 5 miles per hour in the path of a car 100 feet away approaching at the rate of 35 miles per hour.

██ Mrs. Shannon had a bruise on her right hip which was slow to heal and required medical treatment. There was some bleeding under the skin and some swelling which involved the sciatic nerve and made her right leg stiff and sore for a while. Dr. Barnes, who treated both plaintiffs, kept her in bed for about four weeks after having had an X-ray examination made at the Baptist Hospital. We believe that an allowance of $750 for her pain and suffering will be a proper award.

██ Mrs. Guernsey's injuries were less serious than Mrs. Shannon's unless an attack of cystitis or inflammation of the bladder which developed after the accident was caused by her injuries. Dr. Barnes, who was Mrs. Guernsey's family physician as well as Mrs. Shannon's, saw her about one hour after the accident at the Baptist Hospital, to which institution she had been conveyed for examination. He testified that there were no external signs of injury in the region of the bladder. There were contusions and bruises elsewhere on her body but none in that region. It was not until one week later that any symptoms of inflammation of the bladder or cystitis appeared, when she experienced great difficulty in urination and was sent back to the hospital by Dr. Barnes. Dr. Peacock was then called in as an expert urologist. Dr. Peacock first saw Mrs. Guernsey on September 12, 1934, about 27 days after the accident. He gave his opinion as an expert that Mrs. Guernsey's bladder trouble was due to the accident, and that it was quite possible for traumatic injury to the bladder to be unaccompanied by external evidence of injury, if the bladder be distended at the time of trauma. Cystitis is a disease of bacterial origin and results from infection according to Dr. Peacock and all of the other medical experts who testified in the case.

On behalf of the defense Dr. John Pratt, a specialist in urology, tesified that in his opinion Mrs. Guernsey's bladder trouble was not of traumatic origin. Dr. Pratt explained that the bladder is protected laterally by the bony pelvis and in front by heavy abdominal muscles; that in order to cause a traumatic injury to the bladder it would be necessary for the blow to be directed at the lower anterior portion of the abdomen, a lateral blow could not "traumatize the bladder unless there is a fracture of the pelvis"; that due to the presence of thin vascular muceous membranes "any trauma will produce blood in the urine." Neither Dr. Barnes nor Dr. Peacock discovered any blood in the urine until some time after the accident. Dr. Pratt also stated that morphine, which Dr. Barnes had given Mrs. Guernsey just after the accident, "inhibits to a greater or lesser extent the emptying of the bladder" and causes bladder discomfort, a situation "which offers a media for infection," which would account for the suppression of urine, the first symptom of cystitis exhibited by Mrs. Guernsey.

Dr. Miller testified on behalf of defendant. He saw Mrs. Guernsey on the day of the accident and made a thorough examination. He found a contusion of the right shoulder and middle portion of the right little finger, but no evidence of any injury in the bladder region. He saw her again on September 5, 1934. He was asked the following question: "After hearing that testimony (Dr. Barnes and Dr. Peacock) what is your opinion with reference to trauma of a bladder being the cause of cystitis?"

He gave the following answer: "This is my opinion in this particular case: Here was a patient who gave no symptoms of bladder trouble immediately after the accident, and, to my mind, the only way that you are able to prove that this resulted from the accident, you should have a thorough check-up before the accident to know that the patient was not suffering from any previous bladder disturbances, and to have this diagnosis made almost immediately after the accident. Taking for granted the trigone is the floor of the bladder, it is well protected in front and behind and from the sides, and in all cases that I have seen where injury did occur, it occurred either at the superior portion of it or the lateral side where the bladder is not so well protected, and that's the reason why it would rupture from a fall or a blow."

Upon the conflicting medical testimony before us we are unable to conclude that the cystitis which Mrs. Guernsey suffered was the result of the accident. As we have said, the collision between the two cars was not very violent, and while it may have been sufficient to shake up the occupants of the taxicab and cause contusions and bruises, we do not believe that

it was sufficient to cause injury to the bladder which, as we have seen, is protected on all sides except in front. Mrs. Guernsey had no superficial evidence whatever of any frontal injury in the region of her bladder. We, therefore, conclude that this trouble was due to some other cause. For her contusions and bruises and incidental suffering we believe an allowance of $500 to be adequate.

We make no allowance to either plaintiff for expenses incurred in connection with the accident, since plaintiffs were married women, as appears from the allegation of their petition, and their husbands have not been made parties to the suit. The expenses claimed are due, if at all, to the community, and can only be recovered by the husband. Labat v. Gaerthner Realty Co., Inc. (La.App.) 146 So. 69; Shield v. F. Johnson & Son Co., 132 La. 773, 61 So. 787, 47 L.R.A.(N.S.) 1080.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of Mrs. Gertrude Hart, wife of John W. Shannon, plaintiff, and against Toye Bros. Yellow Cab Co., Inc., defendant, in the sum of $750 with legal interest from judicial demand and in favor of Mrs. Amelia Shropshire, wife of Eustace J. Guernsey, plaintiff and against Toye Bros. Yellow Cab Co., Inc., defendant, in the sum of $500 with legal interest from judicial demand. Defendant to pay all costs.

Reversed.

[*]Rehearing denied March 1, 1937.