73 So.2d 192 (1954)
BOUDREAUX
v.
MOREAU et al.
No. 20277.
Court of Appeal of Louisiana, Orleans.
June 7, 1954.
Rehearing Denied June 30, 1954.
Writ of Certiorari Denied October 5, 1954.
*193 George Sladovich, Jr., New Orleans, for plaintiff-appellee.
Porteous & Johnson, New Orleans, for defendants-appellants.
McBRIDE, Judge.
Plaintiff, Irvin A. Boudreaux, the owner and operator of a Pontiac automobile, filed this suit for the recovery of $5,685.56, which represents personal injuries, damages to his automobile, loss of earnings, and costs of hiring another vehicle while his automobile underwent repairs. Plaintiff's automobile was involved in a collision which occurred about 9 o'clock a.m., on October 23, 1952, in Jefferson Parish, at the intersection formed by Carnation and Fench Streets, both of which are very narrow and have gravel surfaces. These streets are 16 feet and 13 feet wide respectively. Plaintiff's automobile was traveling westerly on Carnation Street and was struck by a Plymouth automobile owned by Jimmie Moreau, which was being driven by his 18-year-old employee, Grady W. Claburn, in a southerly direction. Moreau and his liability insurer, who were named as defendants, have appealed from the judgment in favor of plaintiff for $4,185.50.
Claburn was undeniably guilty of negligence; the record reflects that he made entry into the intersection without looking and he never did see plaintiff's automobile until the very moment of the impact. Claburn, however, denies that he was speeding and points out that he had just started out from his home, which is situated half a block from the scene of the accident. Plaintiff's car was struck on its right side toward the rear and came to rest in a ditch up against a utility post, and the Moreau car stopped from 10 to 15 feet from the corner.
The serious question in the case is presented by defendants' alternative plea of contributory negligence; it is therein alleged that Boudreaux was guilty of several specified acts of negligence, among which are the failure to keep a proper lookout, failure to have his vehicle under proper control, and failure to take any steps to avoid the accident.
Boudreaux, when examined under oath in discovery proceedings three months before the trial, testified that he attempted to cross the intersection at 10 miles per hour. At one point in his examination he stated that he noticed the Moreau car on Fench Street when it was half a block away. At another point he placed the Moreau car "at least about 5 car-lengths away" when he first sighted it. He was positive that Claburn was driving at about 25 miles per hour. However, Boudreaux would not give the approximate position of his own car with reference to the intersection at the time he observed Moreau's Plymouth. His testimony at the trial materially varied from that previously given by him. At the trial he estimated his own speed at 15 miles per hour and he claimed that Claburn was not driving at 25 miles an hour but at 45 miles per hour. Boudreaux by way of explanation of the discrepancy in his statements with reference to the speed at which Claburn was driving testified:
"Q. * * * Didn't you testify when I took your depositions on March twenty-fifth 1953, that Grady (Claburn) was going twenty to twenty-five miles per hour? A. Well, I probably did at that time. That is when I went back, since you asked me that, I wanted to establish just about right how fast the man was going, that is why I went back and tried to establish the speed *194 of his car by traveling the same way in the time that it took him to, from the speed I was going. I figure he was going forty-five miles per hour at that time."
Although professing throughout the previous examination that he could not say from what point he first observed the Moreau vehicle, Boudreaux gave this testimony at the trial:
"By the Court:
"Where were you when you first saw Grady's car? Where were you? A. I was in the intersection just across the street.
"By Mr. Porteous:
"Q. You were in the intersection about to cross the street when you first saw him about half a block away? A. He was about not quite half a block away.
"Q. When you first saw his car, where were you? A. I was getting to the corner, crossing the street.
"Q. Where was your car when you first saw him? A. Getting to the corner.
"Q. Getting to the corner and you hadn't arrived at the corner? A. I was getting into it. I was just driving a car and I saw another car coming. I was just getting across the street.

* * * * * *
By the Court:
"Q. Where were you when you first saw him? A. I was getting into the intersection to cross, getting into the intersection to cross the street."
Plaintiff produced two witnesses who say they saw the accident from an automobile in which they were riding and which followed the Boudreaux car on Carnation Street. Wallace, the driver of this car, claims he was 50 feet behind Boudreaux. Wallace says he brought his car to a stop at Fench Street. Both Wallace and Hutchinson, who was Wallace's passenger, are in substantial agreement as to the speed of Boudreaux's car which they estimate to have been 15 miles an hour, and also with reference to Claburn's speed which they fixed at about 40 to 45 miles per hour. But one detail stands out and that is that these witnesses are in hearty disagreement with Boudreaux and also as between themselves concerning the focal point in the case. How far from the intersection was the Moreau car? Wallace says that when he made his stop at the inntersection, Claburn was 20 feet away. Hutchinson's testimony is that when Wallace's car reached a point anywhere from 30 to 50 feet from Fench Street, he first noticed Moreau's car and it was then 15 feet from the intersection.
A most careful study and comparison of all the evidence presented by plaintiff leads us to the firm belief that the Moreau car was in close proximity to the intersection when Boudreaux entered therein. First, if the Moreau vehicle had been as much as half a block distant just as Boudreaux made the unfortunate attempt at negotiating the intersection, even assuming for the purpose of discussion that Claburn had been driving at 45 miles an hour, it is a certainty that Boudreaux at 15 miles per hour would have had ample time to clear the 13-foot width of Fench Street before the other car reached the intersection. Second, from Boudreaux's own testimony it would appear that the Moreau automobile was not as far away as 150 feet upon Boudreaux's arrival at Fench Street. This question was propounded to him:
"When you saw him half a block away, did you continue to keep your eye on him?
His reply was:
"Well, I did until I got to the corner. After I was half past the corner I put my eye back on the road. I wasn't going to watch him until he hit me." (Italics ours.)
Plaintiff chiefly relies on the contention that he had nearly negotiated the intersection or at least pre-empted it, and that in *195 view of this, Claburn should have respected his right of way to complete the crossing. Boudreaux, Wallace, Hutchinson, and even Claburn all say that the crash occurred at a point past the center of the intersection, but their estimates vary. The consensus of their testimony is that Boudreaux's car was struck when it was from two-thirds to three-quarters across the intersection. However, a State Trooper, who appeared on the scene for the purpose of investigating the accident, found chrome and mangled glass from the right front light of the Moreau car about one foot beyond the center of the crossing.
It has been said repeatedly by our appellate courts that pre-emption of an intersection, under principles established by the jurisprudence of the State, does not mean the prior entry of a vehicle simply by a matter of a few feet, or in relation to the time element by a fraction of a second ahead of another vehicle. In order to support a charge of negligence, such pre-emption must be construed to mean an entry into an intersection with the opportunity of clearing the same under normal circumstances and without obstruction of the path of another vehicle such as to cause it to come to an emergency stop. Vernaci v. Columbia Cas. Co., La.App., 71 So.2d 417; Guillot v. Blanchard, La.App., 69 So.2d 922; Lafont v. Nola Cabs, Inc., La.App., 65 So.2d 918; Aucoin v. Houston Fire & Cas. Co., La.App., 44 So.2d 127; Butler v. O'Neal, La.App., 26 So.2d 753. In the light of this jurisprudence, we do not think it can be logically said that Boudreaux had in legal contemplation pre-empted the intersection in question. It must be borne in mind that the intersection formed by the two streets is much smaller than the conventional intersection, and sight must not be lost of the fact that the streets are mere suburban secondary roadways.
It may also be surmised that Boudreaux placed his own safety in Claburn's hands by entertaining an idea that Claburn would stop to accommodate his passage over the intersection. At the discovery proceedings Boudreaux stated:
"Well, I seen him and I knew I had time enough to pass the corner at the speed I was going because he had plenty of time to stop until I was half way past and I noticed he hit me. * * *"
At the trial Boudreaux made the following statement:
"No, I couldn't have avoided it, but he could have avoided it. He could have stopped or turned his wheel to cut out and get in the middle of the street and he would have avoided the accident. * * *"
The instant case bears much similarity to Guillot v. Blanchard, supra [69 So.2d 924], in which we held both drivers guilty of negligence. We said this:
"* * * Guillot entertained the unfortunate assumption that Mrs. LaHaye `would slack down a little bit.' It has been often said `as a rule' intersectional collisions could be avoided if the driver of either vehicle exercises proper care and caution, and that is the situation here. See Guernsey v. Toye Bros. Yellow Cab Co., La.App., 172 So. 459."
Under the circumstances as we appreciate them, our conclusion is that Boudreaux was negligent either in crossing the intersection without keeping a lookout for approaching cars or in making an ill-timed attempt to beat the other car across the intersection. This case involves but a factual situation and we are cognizant that appellate courts are loath to reverse the trial judge in cases where questions of fact only are involved, but we believe the instant case is an exception to the general rule. The trial judge before deciding the case did not have the opportunity of seeing and hearing Boudreaux during both of his examinations. The depositions in the discovery procedure were taken without the presence of the trial judge and they appear in the record in transcript form. We believe that we have the same opportunity of reading and digesting this testimony and of approving and of appraising *196 Boudreaux's statements to the same extent as did the trial judge. Even if this were not so, it so happens that appellate courts frequently reverse the trial judge where facts only are involved. That was the situation in Owens v. Felder, La. App., 35 So.2d 671, 672 in which we made this pertinent observation:
"We are reluctant to reverse the finding of a trial court based primarily on questions of fact, but in a case, such as we are presently analyzing, it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial."
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed; plaintiff is to pay the costs of both courts.
Reversed.