JANVIER, Judge.
In an intersectional automobile collision at about 3:30 o’clock on the afternoon of October 25, 1953, at the corner of State and Perrier Streets, in New Orleans, an automobile owned and driven by Michael Papusha was severely damaged. The other car was owned by John C. Scott and was being operated by his minor daughter, Ruth Ann Scott.
Papusha had secured a policy of what is termed “collision insurance” from General Accident Fire & Life Assurance Corporation, Ltd., under which that company had agreed that it would pay all but $50 of the cost of repairing such damage as might be sustained by his car should it be damaged in collision. The cost of repairing the Papusha car was $472.65. After securing from Papusha a’ subrogation under which he assigned to the said insurer all of his rights against such persons as might be responsible for the accident, the said General Accident Fire &. Life Assurance Corporation, Ltd., brought this suit against Scott and Traders & General Insurance Company,- his liability insurance carrier, alleging that the collision had been caused by negligence on the part of the minor daughter of Scott and that consequently he and his liability insurance carrier were liable to plaintiff for the amount which it had expended in repairing the Papusha car.
The defendants denied liability, particularly on the contention that Papusha had been guilty of contributory negligence and, from a judgment in favor ’of defendants, plaintiff has appealed.
The Papusha car was on State Street, admittedly a wide and much traveled thoroughfare, and it was going in the direction away from the Mississippi River.
The Scott car, on Perrier Street which is considerably narrower, was going in a down river direction, so that as the cars neared the intersection, the. Papusha car approached from the right of the Scott car.
Miss Scott said that she did not remember whether she looked to the right before entering the intersection, but she added: “I guess I did. I looked and didn’t see anything.” It is evident that Miss Scott did not look. The Papusha car was certainly very close to the intersection and, had she looked, she must have seen it. There is no doubt that she was negligent in driving into the much traveled street without looking to her right, particularly because of the provisions of the State Highway Regulatory Statute which affords to the car coming from the right the right of *792 way. In Paragraph A of LSA-R.S. 32:237 appears the following:
“When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. * * * ”
In reality the only question is whether or not Papusha himself was guilty of contributory negligence.
It is argued on behalf of defendants that the Scott car had preempted the intersection and that therefore Papusha was at fault in not affording to Miss Scott an opportunity to complete the crossing in safety. It does seem clear that the Scott car entered the intersection first, because the record shows that at the time of the impact it had traversed more than half of the roadway of State Street and that it was struck on its righthand side near the rear. And it is, of course, conceded that if one vehicle has preempted an intersection other vehicles must afford to it an opportunity to continue across in safety. However, preemption does not result from merely being the first to enter an intersection. If this were so, vehicles could race to an intersection and the first driver to enter could then- claim the preemption and contend that the other was at fault. We said in Sheehan v. Hanson-Flotte Co., La.App., 34 So.2d 657, 660:
“When we use the word ‘preempt’ we do not attribute to it the meaning which counsel for plaintiffs seem to understand that it has. It does not mean that, where one vehicle, by traveling at an excessive rate of speed, is able to enter the intersection when the other which is approaching it is still a few feet away, the first has preempted the intersection and is entitled to cross regardless of what may otherwise have been the right of way. It does not mean that two drivers may race to see which can enter first and that then the one who does enter first may say that he has established his preemption. It merely means that if two vehicles approach an intersection at proper speeds and with the exercise of ordinary precautions and yet one enters sufficiently in advance of the other to justify the belief that it may continue across without danger, it may do so regardless of the fact that the other has approached from the right and would have had the right of way but for the advance position of the first.”
See also Smith v. Manufacturers Casualty Insurance Company, La.App., 83 So.2d 164; Boudreaux v. Moreau, La.App., 73 So.2d 192.
As. we have already said, the fact that Papusha was approaching from the right of Miss Scott entitled him to what may be termed the directional right of way. If two cars approached an intersection at reasonable speeds and it became evident that one could not cross without striking the other, the one which has the directional right of way should be allowed to cross first. Therefore Miss Scott, had she looked, would have realized that Papusha should have been'allowed to cross ahead of her.
And we agree with what our Brothers of the First Circuit said in Gautreaux v. Southern Farm Bureau Casualty Co., La.App., 83 So.2d 667, 669:
“In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the side-streets, but instead concentrate most of their attention on the path ahead, relying on their legal ‘right of way’. Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists’ powers of sustained observation, the legislature has relieved the *793 motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take his attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred.”
We fully realize that the possession of the right of way, either because of being on the favored street or because of the direction from which the respective cars have approached, should afford to the driver who has the right of way some protection against the irresponsible or careless driver who attempts to obtain the right of way though not entitled to it. And we realize too that the driver who has such right of way is not required to stop or to even substantially reduce his speed as he approaches the intersection if he sees that another vehicle is approaching, and that the other driver is apparently observing the situation and has an opportunity to stop and concede the right of way.
Yet we feel that under the circumstances shown here Papusha could have avoided the accident had he exercised the slightest care. By a mere glance to his left he would have noticed the Scott car approaching and he would have realized that its speed and the inattention of Miss Scott indicated the possibility of danger. State' Street is quite wide. He was on its right side and the wall and the bushes which are said to have been on the corner to his left were at least ten feet back from the curb of Perrier Street, so that he could have seen for an appreciable distance up that street and could easily have seen the Scott car had he looked.
Under all these circumstances, we feel that his failure to exercise any care at all constituted contributory negligence on his part. This was one of those accidents which have so often occurred, each of which could have been avoided had either driver exercised the slightest caution.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.