ELLIS, Judge.
The plaintiffs, as owners of a 1955 Chevrolet sedan, have appealed from a judgment denying them damages allegedly resulting from a collision with the car owned and being operated by the defendant, Steve W. Schittone, which occurred at approximately 8:20 P.M. on May 16, 1961 at the Drive, which runs in a generally north-south “T” intersection formed by Dougherty direction, and Choctaw Road, which lies in a generally east-west direction.
Counsel has summarized briefly the plaintiffs’ position in his brief as follows:
“The driver of plaintiff’s car had pre-empted the intersection and Mr. Schittone was negligent in failing to respect her legal right to proceed. But, even if the driver of plaintiff’s car was herself negligent in her conduct, this negligence cannot be imputed to plaintiffs and if the defendant was guilty of any negligence which contributed to the accident, plaintiffs must recover. Defendant was negligent in two respects. First, he was driving his vehicle at an excessive rate of speed under the circumstances and second, he was not maintaining a proper lookout. For these reasons, plaintiffs are entitled to judgment in their favor. There is no dispute as to the amount of plaintiff’s damage, nor is there any dispute that if the defendant, Steve W. Schittone, is found liable, then the defendant, Fidelity & Casualty Company of New York is also liable * * * ”.
The correctness of plaintiff’s position can be determined only by a review of the facts proven upon the trial of the case.
On the night in question, Miss Jenez Roberts, granddaughter of the Shipleys, had borrowed from Mrs. Inez Shipley the car in question in order to go to the picture show. She was driving south on Dougherty Drive in the City of Baton Rouge, accompanied by two guests, and not being familiar with that area of the city, when she approached the “T” intersection at Choctaw Road, she stopped fo,r the purpose of determining from her guests whether to turn right or left. According to Miss Roberts and her guest, Bobby Jean Brown, after the former had determined that she was to turn to the left she then drove into the intersection but, according to the testimony of the other guest, Avis Ruth McKinney, Miss Roberts “ * * * stopped short of the intersection, then she pulled up a little bit more and then she stopped again.” She then went into the intersection, by shifting into first gear and then into second. Miss Roberts testified that all three occupants of the Shipley car saw the defendant’s car “ * * * but it looked like it was a far distance, so we decided we had time enough to go across, so we did, and I had put my car in second before Mr. Schittone’s car hit me.” At another place in the testimony, when queried as to the distance between her car and the defendant’s car at the time she went into the intersection, she stated: “Well, I would say he looked as though he was about four blocks away.” Later in her testimony when asked whether the defendant’s car appeared to be coming fast, she stated: “I couldn’t tell. He just looked far away.” Miss Roberts also testified that at the time she was struck, “I had halfway made the turn. I was kind of like that.” On this point Bobby Jean Brown testified that he saw the other car, but “He was already on top of us when I did see the car. It was before that I didn’t see the car.” He frankly stated that he was really not sure whether he saw the *920 car at the time Miss Roberts was stopped at the intersection. This witness did state, however, that he saw the car as Miss Roberts was pulling out into Choctaw and “ * * * it seems like I told her to go ahead, but I don’t remember, to be honest, but when I saw the car, myself, she had stopped. It would have been probably twice as bad as what it was.” This witness would appear to mean that he thought he remembered telling Miss Roberts to proceed when he saw the car but that- instead she had stopped and was evidently struck while stopped in the defendant’s lane of traffic.
Avis Ruth McKinney was sitting in the middle on the front seat and stated that she saw the car coming at the time they had stopped at the intersection, and the defendant’s car “ * * * was at the gate of Gulf States, or a little bit further back than that when I saw him and we had plenty of time to make the turn, but by the time we got there, the time we were almost out of our turn, he hit us.” She did not know how far the Gulf States gate was from the intersection.
The defendant’s car was on a right of way street and while the view to the north along Dougherty Drive at this intersection was somewhat hampered by a cyclone fence with grass climbing up on it, we do not believe that this fact played an important part in this collision. The defendant testified that he had gotten out of a movie about 6:30 or 7:00 which he had attended by himself, and had been riding around until the time of the accident at approximately 8:20 P.M. Pie was traveling west on Choctaw Road and approached its intersection with Dougherty Drive at about thirty or thirty-five miles per hour and that he did not see the Shipley car at all until he was about sixty-five feet away, “ * * * something in that neighborhood. I don’t remember exactly.” He is in error as to the distance being sixty-five feet for he immediately applied his brakes when he saw the car come into the intersection and left medium light skid marks for a distance of sixty-five feet. Therefore, taking into consideration his reaction time, he was bound to have been a greater distance away when he first observed the Shipley car. The brakes on his car were in good working condition and he insisted that he was not exceeding the speed limit of forty miles per hour but was going thirty to thirty-five miles per hour.
A City Police Officer, John J. Landry, testified that he had investigated the accident and when he arrived at the scene he found the Schittone vehicle in the right lane, headed west on Choctaw, which would be his proper lane of travel. The Shipley car was partly on the shoulder and partly on Choctaw Road at a forty-five degree angle. The left front fender and bumper of the Schittone automobile was damaged, and the Shipley car had been struck at the door post on the left side. This officer also found sixty-five feet of skid marks left by the Schittone automobile in the west bound traffic lane of Choctaw Drive.
The testimony of Officer Sam Jacobs was also offered on behalf of plaintiff and he stated that the point of collision was six feet west of the east parallel line of Dougherty Drive, nine feet south of the north edge of Choctaw, and twelve feet north of the south edge of Choctaw Road, “also showing the one driven by Mr. Schit-tone had sixty-five feet of light, medium skid marks before the point of impact.” He further testified that Choctaw Road was twenty-one feet in width. This officer stated that during the course of his investigation he did not find anything that would indicate that the defendant (Schittone) might have been traveling in excess of the speed limit of forty miles per hour. To the best of his knowledge he stated that the defendant’s car had stopped at the point of impact.
We do not find any merit in the contention that the driver of plaintiff’s automobile pre-empted the intersection. It has been held so many times in our jurisprudence that the citation of authorities is really not necessary that a pre-emption in *921 every case does not depend upon a mere prior entry into an intersection. The rule has been held to clearly require the interpretation of pre-emption to be the entrance into an intersection with a normal and reasonable opportunity and expectation of clearing such intersection without obstruction to the crossing thereof by other normally operated vehicles. Dean v. Pitts, La.App., 133 So.2d 917; Hilton v. Bankers Fire and Marine Ins. Co., La.App., 134 So. 2d 82; Boudreaux v. Moreau, La.App., Orleans Cir. 1954, 73 So.2d 192; Broughton v. Touchstone, La.App., Second Cir., 1953, 72 So.2d 552; Harris v. Travelers Indemnity Company of Hartford, Conn., La.App. 2nd Cir. 1954, 70 So.2d 235; Aucoin v. Houston Fire and Cas. Co., La.App. 1st Cir., 1950, 44 So.2d 127, Butler v. O’Neal, La.App. 2nd Cir., 1946, 26 So.2d 753.
The facts of the instant case as somewhat detailed hereinabove amply support the conclusion that Miss Roberts, the driver of plaintiff’s automobile, was guilty of negligence in her failure to make proper observation, and as a result, entering the intersection of the preferred street without first having ascertained that she could negotiate the intersection without unduly obstructing the passage of normally moving vehicles. There is no testimony that the defendant was driving his automobile at an excessive rate of speed, but, on the contrary, it is shown that he was traveling within the speed limit, and was too close to the intersection for Miss Roberts, had she made a proper observation, to assume that she could enter this intersection with a normal and reasonable opportunity and expectation of clearing it without obstructing the defendant’s normally operated vehicle. The speed chart in Vol. 9-C of Blashfield’s Cyclopedia of Automobile Law and Practice, Sec. 6237 at page 413, shows that the total distance required to stop a motor vehicle traveling at 40 miles per hour is 115 feet, and the actual stopping distance of the vehicle with brakes in excellent condition, exclusive of the reaction time, is seventy-one feet. The Lawyers’ Motor Vehicle Speed Chart gives the total distance in which an automobile may be stopped .at 40 miles per hour at 205.5 feet and the distance the motor vehicle travels after the brakes are actually applied at 147.8 feet. Therefore, from these two charts, the 65 feet of medium light skid marks made by the defendant’s automobile are not indicative of excessive speed but in line with his testimony of 30 to 35 miles per hour.
Counsel for plaintiffs relies upon the case of Hardware Mutual Casualty Company v. Abadie, La.App., 51 So.2d 664. In this case our brethren of the Orleans, now Fourth Circuit, Court of Appeal, found from the facts that either driver could have avoided the accident had he exercised a little more caution and that neither preempted the intersection. In this case the Court specifically recognized the correct rule with regard to pre-emption by stating:
“Preemption does not take place unless the vehicle which enters first does so at a normal speed and after its driver has exercised proper precautions and after it has become evident that it can cross in safety if no other vehicle arrives at an unexpectedly excessive speed.”
In the present case, Miss Roberts did not exercise all the proper precautions. It is true that she stopped at the intersection and observed the approaching vehicle driven by the defendant, but she did not make the proper observation or she would have known that the vehicle was too close for her to cross in safety without obstructing the normal progress of the defendant’s vehicle which was not traveling at an unexpectedly excessive speed but within the speed limit.
Counsel for plaintiff also cites and relies upon Booth v. Columbia Cas. Co., 1955, 227 La. 932, 80 So.2d 869. There was one concurring opinion and one dissenting opinion in this case. The facts are not discussed sufficiently for a correct analysis of the conclusion, however, if the Court intended to hold that one who first enters *922 the intersection and is struck when fully within the intersection has pre-empted the street, there is no doubt that it would be in direct conflict with the settled jurisprudence. We have no doubt that a full explanation of the facts or at least a more detailed explanation of the facts would reveal that the decision is in accordance with the settled rule.
Counsel for plaintiffs also relies upon the case of Thomas v. Checker Cab Co. of New Orleans, 1956, 229 La. 1079, 87 So.2d 605. This case is clearly not apposite factually for it is shown that the taxicab on the favored street was being operated at a high rate of speed, far in excess of the legal speed limit of 20 miles per hour, and that the operator of the other vehicle obeyed the traffic laws by stopping at the stop sign on the corner of Burgundy and Frenchman. The Supreme Court stated:
“ * * * [b] ecause he could not look out Frenchmen Street from this point, he drove into the pedestrian lane, and from there was able to see one-third of a block, or 100 feet, along Frenchmen Street in the direction of the river. The reason he did not catch sight of the approaching taxicab is, we are convinced, that the cab was not at this time in view, being more than 100 feet away when plaintiff entered the intersection. Under these circumstances plaintiff had the right under the law to assume that if there was any car out of his range of vision approaching Burgundy along Frenchmen, its operator would be driving at a lawful rate of speed and in a proper manner. Therefore the plaintiff acted as a reasonably careful and prudent man when he entered the intersection and proceeded across. Beard v. Morris & Co., 156 La. 798, 101 So. 147; Sherwood v. American Ry. Express Co., 158 La. 43, 103 So. 436; Sweeney v. New Orleans Public Service, Inc., La.App., 184 So. 740; Gauthier v. Fogleman, La.App.,
“Thomas was not called upon to anticipate that a vehicle approaching from his right would be operated at an unlawful rate of speed and in an improper manner. Having pre-empted the intersection after stopping, looking, and ascertaining that there was no apparent danger, he had the right of way over a vehicle (the taxicab) approaching from his right, even though this vehicle was being operated on a right-of-way street. Booth v. Columbia Casualty Co., 227 La. 932, 80 So.2d 869, and authorities there relied on.”
It is not necessary to point out the facts which distinguish the cited case from the case .at bar for in the latter the facts have been discussed somewhat in detail and speak for themselves.
Counsel for plaintiffs has cited the cases of Keenan v. Wactor, Orleans, now 4th Cir. Ct. of App., 130 So.2d 800, Gautreaux v. Faucheaux, Orleans, now Fourth, Cir. Ct. of App., 105 So.2d 537, and Washington Fire and Marine Ins. Co. v. Jones, La.App. 4th Cir., 1961, 128 So.2d 687, in support of the proposition that “it is well settled that in the absence of proof of an agency relationship, the owner of an automobile may recover for damage sustained by it in an accident to which the negligence of the operator contributed.” We have no quarrel with this principle of law for it is entirely correct but in the present case we find no negligence on the part of the defendant Schittone, the operator of his automobile.
Counsel for plaintiffs contend that the defendant driver had the last clear chance to avoid this collision. This is based upon the contention that the testimony reveals that the defendant was not keeping a proper lookout and did not see the plaintiff’s car when he could and should have seen it and that such failure constituted negligence. Absent from the plaintiffs brief is any statement that by a proper lookout the defendant could have avoided the accident. He merely argues that the *923 failure to see the car before and at the moment of entry into the intersection constituted failure to keep the proper lookout and negligence, which would entitle the plaintiffs to a judgment for the damages to their car. Be that as it may, the mere failure of the operator of a car on a favored street to see a motor vehicle approaching an intersection in front of him prior to its entry, or just at the moment of entry, does not constitute such negligence as would be a proximate cause of the accident unless it can also be shown that at the moment the vehicle entered the intersection the driver on the favored street approaching such intersection could and should have seen it at that moment and could, under the facts, have taken action which would have avoided the collision.
In the present case it is shown that Miss Roberts stopped back from the intersection, inquired which way to turn, came nearer to the intersection, saw the defendant’s approaching automobile, started in first gear into the intersection, made an angular illegal turn from the northwest quadrant into the northeast quadrant on shifting into second, and brought her automobile to a stop within the northeast quadrant directly in the west bound lane of travel in front ■of the defendant’s approaching automobile. Under the law which needs no citation, had the defendant seen the automobile before it reached the intersection, he would have had a right to assume that it would honor his right of way, and had he seen it at the moment it stopped at the intersection, he •could have indulged in the same assumption, until he actually saw it pull out into his lane of travel. It is only at this time and point that the defendant could be ■charged with negligence contributing to the .accident or as being a proximate cause of the accident if the facts reveal that his speed and distance at that moment were such that he could have avoided the collision. The only positive testimony on this point is given by the defendant and also revealed by the physical evidence of the distance of the skid marks which were measured by the officers as being 65 feet from the point of impact. The defendant’s testimony as to where he first saw the other car is as follows:
“Q. When did you first see the other car?
“A. Just right as I got to the intersection.
“Q. Well, about how far were you from the intersection?
“A. It wasn’t far at all.
“Q. Beg pardon?
“A. I couldn’t have been too far. I’d say about 65 feet, something in that neighborhood. I don’t remember exactly.
“Q. You were about 65 feet from the intersection when you first saw the car?
“A. Probably not that far, though. It happened oso fact. I mean, I saw them as I got to the intersection, that’s when I saw them, I can’t exactly remember.”
The defendant is, of course, bound to have seen the car at a greater distance than 65 feet if we are to consider reaction time. He immediately applied his brakes but was unable to avoid the accident. From the facts revealed by this record, we are unable to conclude that defendant could have avoided the accident had he noticed the driver of plaintiff’s car at the moment she entered the intersection intending to turn left.
We do not find from the facts in this case that the defendant was guilty of any negligence but that he was unable to avoid the collision created solely by the negligence of the driver of the plaintiff’s automobile.
Judgment affirmed.
Affirmed.