FRUGÉ, Judge.
This case arises out of an intersectional collision between Howard Green, the minor son and driver of the automobile owned by Samuel J. Green, and Mrs. Lucille L. McCasland at the outskirts of the City of Alexandria. The petitioner, Fidelity & Casualty Company of New York, was the automobile insurer and subrogee of Samuel Green. It sought judgment against the defendants for the amount of $409.18, which sum it had expended in order to repair the automobile of Mr. Green as a result of the accident.[1]
The defendant answered the appeal and charged Howard Green with certain acts of negligence:
“A. In driving at a high rate of speed.
“B. In failing to have his car under proper control.
“c. [sic] In failing to see the McCasland car which had preempted the service road and which had almost crossed the service road.”
Along with the answer, defendant also filed a reconventional demand for damages suffered by her as a result of the accident. The date of the accident was October 15, 1963, and the date of filing of the answer and reconventional demand was October 16, 1964. Claims emanating from offenses or quasi-offenses prescribe in one year, which year begins to run from the day the damage was sustained. C.C. Arts. 3536 and 3537. Therefore, the trial court held that the reconventional demand was filed one day too late and gave judgment thereon in favor of the original plaintiff.
The defendants contest the trial court’s holding that their reconventional demand had prescribed, arguing that since they paid Samuel Green $100.00, which was the personal expense incurred by him, that payment interrupted prescription as to their claim against Samuel Green. We find no merit in this contention. The fact that defendant did pay Samuel Green $100.00 would not cause prescription to be interrupted upon defendant’s claim against Samuel Green for damages incurred in that accident, although it might bear some legal significance upon prescription of Samuel Green’s claim against the defendant. We feel that the trial court properly ruled that the reconventional demand of defendants was filed too late.
The plaintiff argued, and the trial court agreed, that since contributory negligence is an affirmative defense listed under Article 1005, Code of Civil Procedure, and since defendant’s reconventional demand was rejected, that as a result, defendant had nothing on which she could base a showing of contributory negligence on the part of Howard Green and, therefore, .his negligence would not be at issue in the case at all. Although the answer and the recon-ventional demand filed by the defendant were placed within one document, this does not keep the two from being considered separately, and the rejection of the *759 reconventional demand does not automatically constitute a rejection of other parts of the paper wherein the defendant answered the allegations of the plaintiff. As pointed out above, in the defendant’s answer she did allege negligence on the part of Green, although she did not term it “contributory negligence.” We feel that the allegations in the answer are sufficient to support a showing of negligence on the part of Howard Green and to enable defendant to submit evidence on that issue.
While we think the trial court erred in stating that the negligence of plaintiff’s insured was not at issue, we do not feel as though such error prejudiced the defendant’s cause on appeal here, for we note that the trial court did admit in the record all the defendant’s competent evidence which reflected upon the issue of contributory negligence. Furthermore, the trial court found plaintiff free from negligence, and so we find no reason to remand the case to have the question as to Howard Green’s contributory negligence considered.
The facts of this case are largely undisputed. Bypassing the City of Alexandria there is a four-lane divided highway commonly referred to as MacArthur Drive. Running parallel with MacArthur Drive on both sides are two-lane service roads, and crossing MacArthur Drive are certain cross-over roads which intersect MacArthur Drive and the service roads as well and continue into the city. The speed limit on MacArthur Drive and that on the service roads of MacArthur Drive at this time was sixty miles an hour.
Howard Green was proceeding in a generally southerly direction on the service road paralleling the east side of MacArthur Drive. The defendant had crossed MacArthur Drive from the west and was heading east into town on one of the crossroads to MacArthur Drive which also intersected the service road. It is apparently conceded that Mrs. McCasland did not stop at the intersection of the cross-over roads and the service road. Instead, she continued into the intersection and was struck approximately in the center of the service road by Green’s automobile. Mrs. McCasland’s automobile was struck in the mid-left side by the front of the car driven by Howard Green when her car was in the center of the intersection. Her auto was knocked to the southeast corner of the intersection and into a ditch. Howard Green’s auto, it appears, stopped just near the place of the collision. He left twenty feet of skid marks up to the point of impact. Mrs. Mc-Casland testified that she did not see the other automobile coming until the instant of the collision.
Howard Green testified that he was proceeding at a rate between 30 and 40 miles an hour and that just before he got to the intersection where the collision occurred he noticed Mrs. McCasland entering the intersection from his right side. He immediately slammed on his brakes and cut to the left in order to try to avoid her, but his efforts were ineffective.
The most hotly contested issue at the trial as whether or not there was a stop sign facing Mrs. McCasland at that intersection. Howard Green was positive that there was and that he had the right of way, that is, that the service road was the favored street at that intersection. The investigating officer also testified that there definitely was a stop sign at that corner facing Mrs. McCasland at the date of the accident. On the other hand, Mrs. Mc-Casland testified that she didn’t believe there was a stop sign there since she did not see one. Her testimony was further corroborated by Mrs. Goff, who lived on that corner and stated that at the date of the accident there was not a stop sign at that corner.
The trial court discounted the credibility of Mrs. Goff’s testimony and apparently believed that there was a stop sign at that place. Then the court added:
“Even pretermitting the possibility that there was not a stop sign at this intersection, the time honored custom in this *760 area is that the MacArthur service roads have the right of way, * * *. So really the presence of the stop sign is, in my opinion, purely academic because whether it’s there or not there, this service road by custom and usage had the right of way.”
We are in accord with the findings of the trial court pertaining to the negligence of Mrs. McCasland, and we conclude that she was negligent in failing to observe the approach of the automobile drive by Howard Green and in failing to yield the right of way to him.
In seeking to show negligence on the part of Howard Green, the defendant alleged and argued that Mrs. McCasland had pre-empted the intersection and that the accident occurred only because of the excessive rate of speed of Howard Green. Of course, if Mrs. McCasland had preempted the intersection, then she would be free from negligence proximately causing the accident. The doctrine of pre-emption of intersections has a double barrel effect, which is that when it applies in favor of one party, it not only frees that party from negligence proximately causing the injury, but furthermore, establishes the negligence of the other party.
“ * * * such pre-emption must be construed to mean an entry into an intersection with the opportunity of clearing the same without obstruction of the path of another vehicle under normal and reasonable circumstances and conditions.” Lavigne v. Southern Farm Bureau Cas. Ins. Co., La.App., 125 So.2d 430, 433.
See also, Shipley v. Schittone, 148 So.2d 918 (La.App. 1st Cir. 1963); Dean v. Pitts, 133 So.2d 917 (La.App.2d Cir. 1961); Moore v. Shreveport Transit Co., 115 So.2d 218 (La.App.2d Cir. 1959); Carlson v. Fidelity Mutual Ins. Co., 88 So.2d 461 (La.App.2d Cir. 1956).
The facts of this case do not support the application of the doctrine of preemption. The accident occurred approximately in the middle of the intersection; Howard Green’s automobile left only twenty feet of skid marks. These physical facts indicate that Howard Green must have been very close to the intersection at the moment Mrs. McCasland began to cross it. Furthermore, there was no evidence at the trial whatsoever showing that Howard Green was speeding or that he failed to notice defendant’s presence timely. We think that had Mrs. McCasland seen Howard Green’s automobile she could not have reasonably believed that she had enough time to clear the intersection before the other car would have arrived there.
The defendant charges as error the trial court’s refusal to permit Mrs. McCas-land to testify relative to the speed of Howard Green’s vehicle and cites as authority for our reversing the trial court on this point and remanding the case to receive such testimony the case of Jones v. Southern General Ins. Co., 157 So.2d 335 (La.App. 3d Cir. 1955).
In the Jones case, objection was made to the introduction of testimony pertaining to the speed of an automobile on the grounds that a proper foundation was not laid before such testimony was adduced, and the trial court sustained the objection. This court reversed and remanded the case after finding that a proper foundation was in fact laid. The instant case, however, is quite different. In the first place Mrs. McCas-land testified that she never saw the other automobile until the instant of the impact (Tr. 113 and 114). She also stated that she was unable to make an estimate of Howard Green’s speed (Tr. 107). Finally, in pursuing the matter further, the court determined that she had no personal experience in estimating speed of other moving cars. We cannot say, therefore, that the court erred in refusing to admit her testimony on this point.
On appeal the defendant relies heavily upon the contention that Howard *761 Green had the last clear chance to avoid the accident. That this doctrine need not be pleaded before it can be considered is a well established principle. See Burnett v. Marchand, 186 So.2d 383 (La.App. 1st Cir. 1966); Gallioto v. Chisholm, 126 So.2d 63 (La.App. 4th Cir., 1960); Iglesias v. Campbell, 175 So. 145 (La.App.2d Cir. 1947). The reason for this is that under our procedural system the plaintiff need plead only the facts and the judgment sought. C.C.P. Art. 891. He is not permitted to make any replicatory pleadings; any defense raised, in the answer is considered “denied or avoided” as a matter of law. C.C.P. Art. 852. See also Iglesias v. Campbell, supra; McMahon, Pleadings and Judicial Forms, Comment 2 at 252, in 10 La.Stat.Ann., Code of Civil Procedure, Form 391 (1963). Although there are a number of cases which have permitted the defendant to plead last clear chance, that doctrine is really not intended to serve as a defendant’s tool. See McMahon, Pleadings and Judicial Forms, Comment to Form 392, in 10 La.Stat.Ann., Code of Civil Procedure (1963); Comment, Last Clear Chance Doctrine in Louisiana, 27 La.L.Rev. 269 at 296. Since defendant’s reconventional demand was validly rejected, the doctrine of last clear chance can gain him nothing because that doctrine was designed as a method by which a plaintiff may avoid the consequences of the rule of contributory negligence. We will therefore consider the appellant’s argument that the plaintiff had the last clear chance to avoid the accident as a contention on his part that the plaintiff was contributorily negligent and should thereby be precluded from recovering. The burden of proving contributory negligence rests upon the defendant.
Here, there was no evidence indicating that Howard Green was speeding or that he was unobservant. The defendant urges that had Howard Green maintained proper control over his vehicle, he could have swerved and avoided Mrs. McCasland because the street into which Mrs. McCasland was attempting to go was not at a right angle to the service road, but rather, veered off at some angle to her right (i. e., toward the southeast). But the preponderance of the evidence indicates that Howard Green had neither the time nor the distance in which to do any more to avoid the accident than he did in fact do. It was shown and un-contradicted that Howard Green saw Mrs. McCasland as she entered the intersection, that he immediately sounded his horn and slammed on his brakes, leaving 20 feet of skid marks up to the point of the collision. He also cut his car toward the left in order to swerve around Mrs. McCasland, but this maneuver was ineffective because of the momentum of his automobile and because of the short distance in which he had to respond to the emergency situation created by the negligence of Mrs. McCasland. The record does not show that Howard Green acted unreasonably in any way or that he could have done any more than he did under the circumstances to avoid striking Mrs. McCasland.
For these reasons we feel that defendant appellant has failed to prove the negligence of Howard Green and therefore he must be deemed free from contributory negligence. We conclude that it was the negligence of Mrs. McCasland that was the sole and proximate cause of this accident.
For these reasons, the judgment of the trial court is hereby affirmed, the appellant to pay the costs of this appeal.
Affirmed.

. Originally the suit was filed with Fidelity & Casualty Company and Samuel Green both as plaintiffs, the insurance company suing for the sum of $409.18, which it expended to repair the Green automobile, and Mr. Green suing for the sum of $100, which was the cost to him in repairing the automobile because the policy of insurance was what is termed a $100 deductible. Mr. Green has been paid the $100 by the defendant and therefore he is no longer in the suit.